No. 22-6233

———————————————

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

———————————————

**JOHNNIE R. SIMMONS, JR.**
Plaintiff-Appellant,

**v.**

**R. WHITAKER, ET AL.,**
Defendants-Appellees.

———————————————

**Appeal from the United States District Court
for the Eastern District of Virginia**

———————————————

**OPENING BRIEF OF APPELLANT JOHNNIE R. SIMMONS, JR.**

———————————————

Steven J. Alagna       WASHINGTON UNIVERSITY SCHOOL OF LAW
*Counsel of Record*                       Appellate Clinic
*Supervising Attorney*    One Brookings Drive, MSC 1120-250-102
                                         St. Louis, MO 63130
Alice Gorman                                 (314) 935-7238
Patrick Northrup                      salagna@wustl.edu
Marc Poissonnier
Zachariah Taylor
*Student Advocates*

*Counsel for Appellant Johnnie R. Simmons, Jr.*

December 18, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUES ............................................................. 1

STATEMENT OF THE CASE ................................................................ 2

I. MJO Whitaker choked Mr. Simmons unconscious ........................... 2

II. Subsequent events corroborated the fact that MJO Whitaker choked Mr. Simmons. ................................................................... 11

III. Mr. Simmons filed this civil suit. ................................................. 12

    A. Sergeant Brown and Officer Hull ........................................ 12

    B. MJO Whitaker ..................................................................... 13

    C. Mr. Simmons appeals the district court's judgment. ........... 15

SUMMARY OF THE ARGUMENT ...................................................... 15

STANDARD OF REVIEW ................................................................... 18

ARGUMENT ....................................................................................... 19

I. The district court erred in granting summary judgment because a reasonable jury could find that MJO Whitaker's prolonged chokehold was excessive force and that Sergeant Brown and Officer Hull were capable of intervening and failed to do so. ....... 20

    A. The district court misconstrued the factual record in concluding as a matter of law that MJO Whitaker did not choke Mr. Simmons. ............................................................. 21

    B. MJO Whitaker's prolonged chokehold was objectively unreasonable under the Fourteenth Amendment, which the district court did not consider because it applied the wrong legal framework ................................................................... 24

        1. The district court erroneously applied an Eighth Amendment framework to a claim governed by the Fourteenth Amendment ............................................... 24

        2. The *Kingsley* factors confirm that MJO Whitaker's chokehold was unconstitutionally excessive. .............. 26

    C.     MJO Whitaker's conduct would have violated the Eighth Amendment, if that legal framework applied. ..................... 31

          1.    Choking Mr. Simmons until he went unconscious easily satisfies the objective component. ..................... 31

          2.    A reasonable jury could find that MJO Whitaker's prolonged chokehold betrayed subjective malice. ....... 32

    D.    A reasonable jury could find that Sergeant Brown and Officer Hull knew that MJO Whitaker was choking Mr. Simmons, could have intervened, and failed to do so. ......... 39

II.   Sergeant Brown and Officer Hull are not entitled to affirmance based on qualified immunity ......................................................... 41

III.  The district court abused its discretion in dismissing MJO Whitaker. ...................................................................................... 44

CONCLUSION ........................................................................................ 46

STATEMENT REGARDING ORAL ARGUMENT ................................ 48

CERTIFICATE OF COMPLIANCE ......................................................... 49

CERTIFICATE OF SERVICE .................................................................. 49

# TABLE OF AUTHORITIES

**Cases**

*Attkisson v. Holder*, 925 F.3d 606 (4th Cir. 2019) ................................... 18

*Bailey v. Kennedy*, 349 F.3d 731 (4th Cir. 2003) ................................... 29

*Boone v. Moore*, 844 F. App'x 667 (4th Cir. 2021) ............................. 44, 46

*Brooks v. Johnson*, 924 F.3d 104 (4th Cir. 2019) ........................... *passim*

*Coley v. Lucas Cnty., Ohio*, 799 F.3d 530 (6th Cir. 2015) ...................... 30

*Dean v. Jones*, 984 F.3d 295 (4th Cir. 2021) ................................... *passim*

*Dilworth v. Adams*, 841 F.3d 246 (4th Cir. 2016) ................................. 30

*Dukes v. Richards*, 2009 WL 9056101 (E.D.N.C. Aug. 27, 2009) ........... 41

*Dukes v. Richards*, 366 F. App'x 467 (4th Cir. 2010) ............................. 41

*Est. of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014) ........................ 30

*Gomez v. Toledo*, 446 U.S. 635 (1980) ................................................. 42

*Graham v. Connor*, 490 U.S. 386 (1989) ......................................... 25, 26

*Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521
(6th Cir. 2018) ................................................................................. 35

*Harris v. Pittman*, 927 F.3d 266 (4th Cir. 2019) .................................. 18

*Hope v. Pelzer*, 536 U.S. 730 (2002) ............................................... 42, 43

*Hudson v. McMillian*, 503 U.S. 1 (1992) ............................................. 31

*Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008) .................................... 31, 38

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) .............................. *passim*

*Lombardo v. City of St. Louis*, 141 S. Ct. 2239 (2021) ........................... 25

*Mays v. Sprinkle*, 992 F.3d 295 (4th Cir. 2021) ................................... 43

*Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723 (4th Cir. 2013) .............. 29

*Randall v. Prince George's Cnty.*, 302 F.3d 188 (4th Cir. 2002) ............ 29

*Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292
     (4th Cir. 2006) ................................................................. 40

*Rios v. Veale*, 648 F. App'x 369 (4th Cir. 2016) ...................................... 32

*Sales v. Grant*, 224 F.3d 293 (4th Cir. 2000) ........................................ 42

*Scott v. Harris*, 550 U.S. 372 (2007) ...................................................... 18

*Shuler v. Orangeburg Cnty. Sheriff's Dep't*, 71 F.4th 236
     (4th Cir. 2023) ................................................................. 45

*Suarez Corp. Indus. v. McGraw*, 125 F.3d 222 (4th Cir. 1997) .............. 42

*Tatum v. Robinson*, 858 F.3d 544 (8th Cir. 2017) ................................. 30

*Thompson v. Virginia*, 878 F.3d 89 (4th Cir. 2017) ......................... 42, 43

*Tuuamalemalo v. Greene*, 946 F.3d 471 (9th Cir. 2019) ........................ 30

*United States v. Cowden*, 882 F.3d 464 (4th Cir. 2018) ........................ 30

*Valencia v. Wiggins*, 981 F.2d 1440 (5th Cir. 1993) ........................ 30, 35

*Whitley v. Albers*, 475 U.S. 312 (1986) .............................................. 33, 38

*Wilkins v. Gaddy*, 599 U.S. 34 (2010) .................................................... 32

*Witt v. W.V. State Police, Troop 2*, 633 F.3d 272 (4th Cir. 2011) ..... 18, 22

**Statutes and Rules**

28 U.S.C. § 1291 ........................................................................................ 1

28 U.S.C. § 1331 ........................................................................................ 1

42 U.S.C. § 1983 ........................................................................................ 1

Fed. R. Civ. P. 4(m) .................................................................................. 44

Fed. R. Civ. P. 5(b)(2)(C) ......................................................... 45

Fed. R. Civ. P. 56(a) ................................................................. 18

## STATEMENT OF JURISDICTION

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because this is a timely appeal from the final decision of the U.S. District Court for the Eastern District of Virginia. J.A. 333–337. Federal courts have subject-matter jurisdiction under 28 U.S.C. § 1331, as the case involves an excessive-force claim under 42 U.S.C. § 1983.

## STATEMENT OF THE ISSUES

I.     In a § 1983 bystander-liability claim, summary judgment is appropriate only when there is no genuine dispute of material fact whether a plaintiff's constitutional rights were violated and officers knew of the violation, had the opportunity to prevent the harm, and failed to do so. Here, Officer Hull and Sergeant Brown both looked on as MJO Whitaker choked Mr. Simmons unconscious. Neither Sergeant Brown nor Officer Hull stopped the sustained, forty-eight second chokehold. Did the district court err in granting summary judgment for Sergeant Brown and Officer Hull?

II.     This Court does not allow qualified immunity to be asserted for the first time on appeal. The defendants did not raise qualified

immunity in the district court. Should this Court affirm summary judgment on this unraised, alternative basis?

III. A district court abuses its discretion when it fails to provide the plaintiff an opportunity to show cause before sua sponte dismissing a defendant for lack of service. The district court issued a show-cause order for the lack of service on defendant MJO Whitaker, but it mailed the order to Mr. Simmons's wrong address and the order was returned to the court undeliverable. Did the district court abuse its discretion in proceeding to dismiss MJO Whitaker?

## STATEMENT OF THE CASE

## I. MJO Whitaker choked Mr. Simmons unconscious.

On February 8, 2019, a correctional officer was escorting Mr. Simmons from the medical unit to his housing unit in the Hampton Roads Regional Jail. J.A. 61. Defendant-appellee Master Jail Officer (MJO) R. Whitaker and defendant-appellee Sergeant Derrick Brown spotted the pair walking towards them. J.A. 61. As Mr. Simmons and the officer approached, MJO Whitaker and Sergeant Brown turned around and began walking with them. J.A. 61.

Mr. Simmons then told the group of officers that he wanted to be placed in a different housing unit because he was being harassed in his

current one. J.A. 40–41; J.A. 60–62; J.A. 269. The officers denied his request to be moved. J.A. 61.

As the group neared Mr. Simmons's unit, he sat down on the ground and again pleaded with the officers. J.A. 43–44; J.A. 61–62; J.A. 271–272. They continued to deny his request and he did not comply when they ordered him to stand up. J.A. 43–44; J.A. 271–272.

The jail's video footage shows Mr. Simmons and the officers surrounding him—MJO Whitaker, Sergeant Brown, defendant-appellee Officer Benjamin Hull (who had joined the group at some point), and two more officers—conversing for a little over a minute and a half.[1] Video at 12:09:55–12:11:32. Officer Hull testified that Mr. Simmons said, "If any of you touch me, I will bite you." J.A. 41; J.A. 260. The video does not have sound. Throughout the conversation, Mr. Simmons remained seated

---

[1] The district court "misplaced" the DVD containing the video evidence that defendants-appellees had submitted as Exhibit 4 to their summary-judgment motions. J.A. 338. Accordingly, "to complete the record for the pending appeal," the district court recently ordered defendants-appellees' counsel to submit a new copy of that video exhibit. J.A. 338. Because the copy of the video the district court viewed when deciding summary judgment is now unavailable, this brief's citation to "Video" refers to the video that defendants-appellees' counsel submitted to the district court on November 13, 2023, pursuant to that order. J.A. 339.

and handcuffed with his arms in front of him. Video at 12:09:55–12:11:32.

After Mr. Simmons declined to stand up, MJO Whitaker and Officer Hull pulled Mr. Simmons to his feet, lifted him into the air, and began carrying him toward his unit. J.A. 41; J.A. 44; J.A. 62; J.A. 269; J.A. 272; Video at 12:11:32–12:11:38. The officers awkwardly carried Mr. Simmons by holding onto his legs—MJO Whitaker carrying his left and Officer Hull carrying his right—such that Mr. Simmons's hips rested precariously on the officers' shoulders, leaving his lower legs slightly elevated and his upper body unsupported and pitched downward. Video at 12:11:42 (shown below).



For most of the time he was carried, Mr. Simmons was still. Video at 12:11:38–12:11:45. But as the door leading to his unit came into his view and when he was a few yards away, he began to squirm. Video at 12:11:46; J.A. 44; J.A. 272. Sergeant Brown calmly walked behind the trio and took Mr. Simmons's legs to help the officers reposition him. Video at 12:11:46–12:11:49. In the process, Mr. Simmons's left leg dropped to the ground and his right leg remained in Sergeant Brown's grasp. Video at 12:11:51. At no point did the relatively light, 155-pound Mr. Simmons make any threatening or aggressive moves. Video at 12:11:38–12:11:51; J.A. 62. Nonetheless, MJO Whitaker immediately wrapped his right arm around Mr. Simmons's neck and locked him in a chokehold. J.A. 62; Video at 12:11:51 (shown below, zoomed in).



MJO Whitaker used the chokehold to drag Mr. Simmons to the ground. J.A. 62; Video at 12:11:51–12:11:54. After completing the takedown, MJO Whitaker held the chokehold while keeping his body weight on Mr. Simmons's back. *See* Video at 12:12:06. Officer Hull knelt over Mr. Simmons and assisted MJO Whitaker. Video at 12:11:55.

From the moment he hit the ground, Mr. Simmons did not resist—he hardly moved at all. Video at 12:11:54–12:12:39. Sergeant Brown held up Mr. Simmons's right foot and made no attempt to control Mr. Simmons's left leg, which was motionless. Video at 12:11:54–12:12:15. Neither Officer Hull nor MJO Whitaker struggled to control Mr. Simmons. Video at 12:11:54–12:12:39. But despite Mr. Simmons's non-resistance, MJO Whitaker continued to choke him. J.A. 62–63; Video at 12:11:54–12:12:39.

Sergeant Brown had been holding up Mr. Simmons's right foot. Video at 12:11:51–12:12:15. But after twenty-four seconds of MJO Whitaker's chokehold, Sergeant Brown let the foot go, approached MJO Whitaker, and tapped him on the shoulder repeatedly. Video at 12:12:16–12:12:35. MJO Whitaker kept holding Mr. Simmons in the chokehold.

Scared for his life, Mr. Simmons tried to tell MJO Whitaker that he couldn't breathe, but the chokehold prevented him from speaking. J.A. 62. MJO Whitaker applied even more pressure, asking Mr. Simmons, "Are you going to comply?" J.A. 62. Mr. Simmons remained motionless and could not respond. J.A. 62.

MJO Whitaker continued to choke Mr. Simmons, who fell unconscious. J.A. 51; J.A. 63; J.A. 279. His right foot slid to the floor and went limp. Video at 12:12:23–12:12:26.

Thirteen more seconds of choking elapsed before MJO Whitaker released Mr. Simmons. Video at 12:12:39. In total, MJO Whitaker choked Mr. Simmons for forty-eight seconds. Video at 12:11:51–12:12:39.

All the while, Sergeant Brown and Officer Hull stood by and observed: Officer Hull was kneeling over Mr. Simmons as he watched MJO Whitaker choke him. Video at 12:11:56–12:12:39. And Sergeant Brown let go of Mr. Simmons's foot and walked up to look over MJO Whitaker's shoulder as he choked Mr. Simmons. Video at 12:12:15–12:12:17.

Although Officer Hull and Sergeant Brown (along with another officer) surrounded MJO Whitaker and Mr. Simmons, none of them attempted to stop the choking. Video at 12:11:51–12:12:39.



Video at 12:12:03 (zoomed in).

When MJO Whitaker finally released the chokehold, he took his body weight off of Mr. Simmons and appeared to begin checking him for a pulse. Video at 12:12:40. MJO Whitaker kept his fingers on Mr. Simmons's neck for about thirty seconds. Video at 12:12:40–12:13:09. During this period, Mr. Simmons was nonresponsive; his body was limp and motionless. Video at 12:12:40–12:13:09. Another officer placed leg irons on Mr. Simmons's unmoving legs. Video at 12:12:41–12:12:54.



Video at 12:12:55 (zoomed in).

As Mr. Simmons began to regain consciousness, the officers rolled him onto his back and sat him up. Video at 12:13:10–12:13:18. Mr. Simmons was disoriented, confused, and unbalanced. Video at 12:13:18–12:13:23; J.A. 63.

Around that time, Mr. Simmons heard Sergeant Brown ask MJO Whitaker, "What you do that for?" J.A. 63. MJO Whitaker responded, "When we were carrying him, he let his legs hang down." J.A. 63.



Video at 12:13:20 (zoomed in).

Mr. Simmons noticed that he had urinated—there was a wet spot on his pants, J.A. 44; J.A. 63; J.A. 272, and on the floor, J.A. 63. The video footage ends with the officers leading Mr. Simmons through the door to his unit. Video at 12:13:39–12:13:55; *see also* J.A. 63.

The officers briefly placed Mr. Simmons in his cell and then promptly returned him to the medical unit, where he had been just before the choking incident. J.A. 40; J.A. 44; J.A. 61; J.A. 64; J.A. 268; J.A. 272. There, Mr. Simmons asked to speak to a nurse in private, explaining that MJO Whitaker had choked him and that he wanted an x-ray because his neck and back were in pain. J.A. 44; J.A. 64; J.A. 272. The nurse denied his request. J.A. 47; J.A. 64; J.A. 73; J.A. 275.

The officers then took Mr. Simmons back to his cell. J.A. 64. But his stay there was short-lived: Later that same day, the jail granted his original request to move to a new unit. J.A. 64–65.

## II. Subsequent events corroborated the fact that MJO Whitaker choked Mr. Simmons.

The following day, Mr. Simmons submitted a healthcare-request form. J.A. 51; J.A. 279. In the "Nature of problem or [r]equest" field, Mr. Simmons wrote that he had been choked unconscious the previous day, was experiencing neck and throat pain, and felt as if his Adam's apple had been crushed. J.A. 51; J.A. 279.

Three days after the choking incident, the jail's health service saw Mr. Simmons. J.A. 49–50; J.A. 277–278. The clinic's notes identified "a[n] area of slight swelling and tenderness on [the] right side of [his] neck" and noted that Mr. Simmons reported trouble swallowing. J.A. 50; J.A. 278.

In the aftermath of the incident, MJO Whitaker was forced to resign and Sergeant Brown was demoted. J.A. 60; J.A. 71. Additionally, the Portsmouth Police criminally investigated MJO Whitaker for felony aggravated assault based on the choking incident, interviewing Mr. Simmons in the process. J.A. 285–289. Mr. Simmons learned that

Commonwealth attorneys intended to file criminal charges against MJO Whitaker. J.A. 288.

## III. Mr. Simmons filed this civil suit.

Mr. Simmons filed a pro se complaint against Sergeant Brown and MJO Whitaker, alleging excessive force in violation of the Eighth Amendment. J.A. 13–23. Mr. Simmons later amended his complaint, including to add Officer Hull as a defendant, J.A. 79; J.A. 205, and to note that his claim also arises under the Fourteenth Amendment, J.A. 85; J.A. 97; J.A. 211; J.A. 223. Mr. Simmons claimed that Sergeant Brown and Officer Hull were liable as bystanders. J.A. 17; J.A. 97.[2]

### A. Sergeant Brown and Officer Hull

Sergeant Brown and Officer Hull filed motions for summary judgment, attaching affidavits, exhibits, and the jail's video footage of the choking incident. J.A. 29–30; J.A. 38–52; J.A. 257–258; J.A. 266–280.[3]

---

[2] Mr. Simmons had also named Superintendent Christopher Walz as a defendant. J.A. 14. Superintendent Walz filed a motion to dismiss, J.A. 306–307, and the district court granted his motion, J.A. 333. Mr. Simmons does not appeal Superintendent Walz's dismissal.

[3] The district court incorrectly stated that both Sergeant Brown's and Officer Hull's motions for summary judgment were filed on July 13, 2021. J.A. 318. While Officer Hull filed his motion on that day, Sergeant Brown had previously filed his on December 30, 2020. J.A. 29; J.A. 257.

Mr. Simmons responded with his own sworn affidavits. J.A. 60–77; J.A. 286–289. The district court granted Sergeant Brown's and Officer Hull's motions. J.A. 318–334.

The district court did not analyze all the elements of Mr. Simmons's bystander-liability claim; instead, it held that the video proved that no reasonable finder of fact could conclude that MJO Whitaker choked Mr. Simmons. J.A. 330–331. The district court applied an Eighth Amendment framework and held as a matter of law that Mr. Simmons was not choked, but rather only "lower[ed] . . . to the floor." J.A. 330–331. So, the court held, there was no predicate constitutional violation to support bystander liability.

## B.    MJO Whitaker

Mr. Simmons, pro se, kept the district court apprised of his address changes throughout the proceedings. *See* J.A. 6–9 (showing Mr. Simmons's change-of-address notices). On October 4, 2021, Mr. Simmons notified the court that his address was "no longer 1811 King Street." J.A. 303–304. On October 22, 2021, he informed the court of his new address at 5764 S. Ottawa Road. J.A. 305.

The district court had first ordered a summons on MJO Whitaker on October 22, 2020, but as of December 2021, he had not been served. J.A. 3; J.A. 6; J.A. 8; J.A. 27–28; J.A. 254–255; J.A. 301–302. By December 15, 2021, all other parties had filed dispositive motions, so the district court ordered Mr. Simmons to provide an address at which MJO Whitaker could be served or "to show cause, if any, why this civil action should not be dismissed pursuant to Fed. R. Civ. P. 4(m) with respect to defendant Whitaker" within twenty-one days. J.A. 313–314.

But the district court sent that show-cause order to the wrong address (on King Street), which Mr. Simmons had already indicated was incorrect and outdated. J.A. 303–304; J.A. 315–317. The court never sent the show-cause order to Mr. Simmons's current address on file (on Ottawa Road).

The show-cause order returned to the court as undeliverable. J.A. 315. The docket does not indicate that the district court made any other attempt to notify Mr. Simmons of its show-cause order. J.A. 9–12.

In the same Memorandum Opinion in which the district court entered summary judgment for Sergeant Brown and Officer Hull, it dismissed MJO Whitaker without prejudice for lack of service. J.A. 318.

The district court stated that Mr. Simmons had "neither provided an address [for Whitaker] nor shown cause why Whitaker should not be dismissed" in response to the (undelivered) show-cause order. J.A. 318. The district court did not acknowledge that it had sent the show-cause order to an address for Mr. Simmons that the docket showed to be incorrect and outdated, or that the mail enclosing the order had returned, undelivered. J.A. 318.

## C.    Mr. Simmons appeals the district court's judgment.

Mr. Simmons timely filed a notice of appeal. J.A. 336–337. This Court appointed the undersigned counsel to represent Mr. Simmons on appeal and identified as an issue of particular interest the "[p]ropriety of [the] district court's conclusion on bystander liability," among "other issues." Doc. 21.

## SUMMARY OF THE ARGUMENT

Summary judgment was improper. First, in beginning to assess bystander liability, the district court erred in holding that no reasonable jury could find that MJO Whitaker committed the predicate constitutional violation of continuously choking Mr. Simmons. To the contrary, when properly viewed through Rule 56's lens, the evidence (including the video the district court relied on) shows that MJO

Whitaker choked Mr. Simmons for forty-eight seconds. For at least forty-five of those seconds, Mr. Simmons was not resisting—indeed, for thirteen seconds, he was unconscious. The district court erred when it drew inferences against Mr. Simmons and improperly construed the video evidence, which stopped well short of clearly or blatantly contradicting his testimony. In fact, the video supports his account. In other words, a reasonable jury could easily find that MJO Whitaker subjected Mr. Simmons to a prolonged, disproportionate chokehold without justification.

In addition to the district court's Rule 56 error, it also applied the wrong constitutional framework. As a pretrial detainee, the Fourteenth Amendment's objective-reasonableness standard governed Mr. Simmons's excessive-force claim, but the district court purported to undertake an Eighth Amendment analysis, which requires proof of subjective malice. Under the correct legal standard, the factual record easily shows that the prolonged chokehold was objectively unreasonable.

Even under an Eighth Amendment framework, summary judgment was inappropriate. MJO Whitaker's strangulation of Mr. Simmons easily clears the de minimis, objective threshold of an Eighth Amendment

excessive-force claim. And a reasonable jury would find ample support in the record to conclude that the forty-eight second chokehold was subjectively malicious.

The district court therefore erred in holding, as a matter of law, that no predicate constitutional violation took place. Because the district court improperly held there was no violation, it ended its bystander-liability analysis there. This Court should vacate and remand for the district court to complete that analysis in the first instance. In any event, the record shows that Officer Hull and Sergeant Brown were mere inches away and failed to intervene despite having ample opportunity during the forty-eight seconds MJO Whitaker choked Mr. Simmons.

Nor are Sergeant Brown and Officer Hull entitled to qualified immunity. They failed to raise that defense below, so it is waived on appeal. Even if Sergeant Brown and Officer Hull had preserved the defense, it is clearly established that inmates have a right to be free from malicious attacks and a right to count on jail officials to intervene.

Finally, the district court abused its discretion when it sua sponte dismissed MJO Whitaker without first providing notice of Mr. Simmons's

opportunity to show cause, as Rule 4(m) requires. This Court should therefore vacate the dismissal of MJO Whitaker and remand.

## STANDARD OF REVIEW

This Court reviews summary judgment de novo. *Dean v. Jones*, 984 F.3d 295, 301 (4th Cir. 2021). Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if a reasonable jury could return a verdict for the nonmoving party." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019) (cleaned up). Courts review evidence in the light most favorable to the nonmoving party. *Id.* at 111. A court may not credit video evidence over a plaintiff's account unless the video "clearly" and "blatantly contradicts a plaintiff's account so that no reasonable jury could believe it." *Witt v. W.V. State Police, Troop 2*, 633 F.3d 272, 276–77 (4th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)) (cleaned up); *accord Harris v. Pittman*, 927 F.3d 266, 277 (4th Cir. 2019).

This Court reviews the dismissal of a defendant for lack of service for abuse of discretion. *Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019).

# ARGUMENT

The district court erred many times over. First, it erred under Rule 56 when it conclusively relied on ambiguous video evidence over Mr. Simmons's sworn testimony that MJO Whitaker choked him while Sergeant Brown and Officer Hull looked on. The video, which was the centerpiece of the district court's summary-judgment decision (and which the district court later "misplaced," J.A. 338), could not support summary judgment because it did not contradict Mr. Simmons's sworn statements—much less clearly or blatantly.

On top of that, the district court purported to apply an Eighth Amendment framework to a claim governed by the Fourteenth Amendment. Under either standard, MJO Whitaker's prolonged chokehold was unconstitutional excessive force. So the district court should have proceeded to the rest of the bystander-liability analysis (which confirms additional triable issues of fact). Nor can the officers seek to affirm the judgment on the alternative grounds of qualified immunity, as they failed to assert that defense below, which is meritless in any event.

Finally, the district court erred in dismissing MJO Whitaker for lack of service without properly notifying Mr. Simmons of his opportunity to show cause, as Federal Rule of Civil Procedure 4(m) requires. Accordingly, this Court should vacate and remand.

## I. The district court erred in granting summary judgment because a reasonable jury could find that MJO Whitaker's prolonged chokehold was excessive force and that Sergeant Brown and Officer Hull were capable of intervening and failed to do so.

The district court erred on multiple fronts. At the threshold, it misconstrued the record when it relied on video evidence to conclude that MJO Whitaker did not choke Mr. Simmons. On this record, the court could not have jumped to such a conclusion without violating Rule 56.

Compounding the error, the district court applied an Eighth Amendment framework to Mr. Simmons's excessive-force claim, which is governed by the Fourteenth Amendment because he is a pretrial detainee. In any event, once the factual record is properly construed, MJO Whitaker's prolonged chokehold constituted excessive force under either framework, confirming that he committed the predicate constitutional violation that marks the first step of bystander liability. Vacatur and remand are therefore appropriate.

The district court never completed the bystander-liability analysis, which is yet another reason to vacate and remand. The factual record confirms triable jury questions whether Sergeant Brown and Officer Hull had an opportunity and failed to intervene when they watched MJO Whitaker's prolonged chokehold of Mr. Simmons. Accordingly, summary judgment against Mr. Simmons's bystander-to-excessive-force claim was erroneous many times over.

### A. The district court misconstrued the factual record in concluding as a matter of law that MJO Whitaker did not choke Mr. Simmons.

The district court below committed the same summary-judgment error that this Court corrected in *Brooks v. Johnson*, 924 F.3d 104 (4th Cir. 2019) (vacating summary judgment of bystander-liability claims when district court found no predicate constitutional violation after erroneously relying on video evidence that did not clearly or blatantly contradict the plaintiff's account).

Mr. Simmons testified that MJO Whitaker choked him by applying, holding, and even intensifying a prolonged chokehold for forty-eight seconds. J.A. 60–77; J.A. 286–289. He also testified that the force was so great that he couldn't speak, fell unconscious, urinated himself, and

experienced neck and back pain. J.A. 44, J.A. 51, J.A. 62–64, J.A. 272, J.A. 279. And when he came to, another officer asked MJO Whitaker "What you do that for?" J.A. 63. The jail's health-services records confirmed that Mr. Simmons continued to experience pain, trouble swallowing, and swelling and tenderness in his neck three days after the incident. J.A. 49–50, J.A. 277–278. And based on the incident, MJO Whitaker was forced to resign (and criminally investigated) and Sergeant Brown was demoted. J.A. 70–71, J.A. 285–289.

In the face of all this testimony and other evidence, the district court curiously concluded that "the evidence does not establish [Mr. Simmons] was choked," J.A. 331, purporting to rely on the video as unambiguous proof of the absence of choking. But when a plaintiff provides testimony like Mr. Simmons's, a district court may not disregard it and enter summary judgment based on contrary video evidence unless the video "blatantly" or "clearly" contradicts the plaintiff's account. *Witt*, 633 F.3d at 277. Indeed, even if video evidence renders the plaintiff's account "unlikely," the video cannot support summary judgment unless it leaves the plaintiff's testimony "utterly discredited" or "clearly or blatantly" contradicted. *Id.* (cleaned up).

Here, far from "blatantly" or "clearly" contradicting Mr. Simmons, the video of the incident *supports* his testimony that he was choked. The video depicts a prolonged chokehold in which Mr. Simmons appears to go unconscious, Video at 12:11:51–12:12:39, after which the officers appear to check him for a pulse, Video at 12:12:40–12:13:09. The district court's confounding conclusion that no reasonable jury could find a choking occurred is therefore just wrong. The court could not have reached that conclusion without improperly discounting Mr. Simmons's testimony— and other evidence—and misinterpreting a video that simply did not prove the absence of choking.

As this Court held in *Brooks*, the proper approach would have been to "review[] carefully" the video footage and construe it in the light most favorable to Mr. Simmons. 924 F.3d at 108, 112. Whenever the video falls short of definitively disproving Mr. Simmons's account, his testimony must be credited, as the nonmovant. *See id.* at 108 ("The soundless video cannot resolve inconsistencies on this point, and so we take the view more favorable to [the plaintiff], as the party opposing summary judgment."); *see also Dean v. Jones*, 984 F.3d 295, 308 (4th Cir. 2021) (reversing summary judgment when district court improperly relied on ambiguous

video evidence that a reasonable jury could have viewed "as resolving this discrepancy in [the plaintiff's] favor").

In sum, the district court improperly resolved a disputed factual question against Mr. Simmons. Properly construed, the factual record shows that MJO Whitaker choked Mr. Simmons for forty-eight seconds, during which he maintained and intensified the pressure, even beyond the point where Mr. Simmons fell unconscious. The Court should therefore vacate summary judgment and remand.

## B. MJO Whitaker's prolonged chokehold was objectively unreasonable under the Fourteenth Amendment, which the district court did not consider because it applied the wrong legal framework.

### 1. The district court erroneously applied an Eighth Amendment framework to a claim governed by the Fourteenth Amendment.

Apart from erring by misconstruing the facts on summary judgment, the district court also compounded that error by misinterpreting the legal import of those facts. Most immediately, the district court erred when it applied an Eighth Amendment framework to Mr. Simmons's excessive-force claim. J.A. 329–331. In 2015, the Supreme Court held that the Eighth Amendment does not apply to excessive-force claims brought by pretrial detainees like Mr. Simmons. *Kingsley v.*

*Hendrickson*, 576 U.S. 389, 400–01 (2015); J.A. 22; J.A. 84–85; J.A. 88; J.A. 96–97 (noting that Mr. Simmons is a pretrial detainee raising claims under the Fourteenth Amendment). Rather, it is the Fourteenth Amendment's "due process" clause that protects pretrial detainees from all punishment, which includes excessive force. *Kinglsey*, 576 U.S. at 397–98; *see also Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).[4]

*Kingsley* confirmed that the Fourteenth Amendment's objective-reasonableness standard governs pretrial detainees' excessive-force claims. 576 U.S. 396–97. So pretrial detainees like Mr. Simmons need not prove that the offending officer acted with subjective malice, as the Eighth Amendment would require. *Id.* at 400. Instead, the test is whether the officer's use of force was "objectively unreasonable" under the circumstances. *Id.* at 396–97.

In entering summary judgment, the district court concluded the evidence did not "evince a[n]y malice or ill will." J.A. 331. But *Kinglsey*

---

[4] The Supreme Court has not directly addressed whether the Fourth Amendment might also apply in these cases, but the analysis is the same regardless. *See Lombardo v. City of St. Louis*, 141 S. Ct. 2239, 2241 n.2 (2021) ("Whatever the source of law, in analyzing an excessive force claim, a court must determine whether the force was objectively unreasonable in light of the 'facts and circumstances of each particular case.'" (citing *Kingsley*, 576 U.S. at 397)).

makes clear that it was erroneous to undertake that kind of subjective inquiry. 576 U.S. at 396–97. The correct approach would have been to determine whether the set of facts (including reasonable inferences in a light most favorable to Mr. Simmons) showed that MJO Whitaker's prolonged chokehold was objectively reasonable. Under that framework, it becomes even clearer that the district court's entry of summary judgment was improper.

2. **The *Kingsley* factors confirm that MJO Whitaker's chokehold was unconstitutionally excessive.**

The Supreme Court articulated factors to determine whether an officer's use of force against a pretrial detainee was unconstitutionally excessive:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397 (citing *Graham*, 490 U.S. at 396). This is a fact-specific inquiry. *Id.*

Under the objective-reasonableness standard required by *Kingsley*, MJO Whitaker's prolonged chokehold of Mr. Simmons constituted excessive force. This is because a reasonable jury could easily find that

MJO Whitaker continued and even intensified the chokehold long after any legitimate need for force had dissipated.

Beginning with "the relationship between the need for the use of force and the amount of force used," "the severity of the security problem at issue," and "the threat reasonably perceived by the officer," *id.*, the officers never contended that they feared for their safety. J.A. 38–45; J.A. 266–273. At most, Mr. Simmons posed only a temporary threat to order by initially refusing to go to his unit, where he was being harassed. Video at 12:09:55–12:11:32; J.A. 61.

And even if there had been a justifiable penological need to apply some amount of force to maintain order at the beginning, MJO Whitaker went far beyond the pale. A reasonable jury could easily find that MJO Whitaker's conduct exceeded constitutional limits—at least at some point during the forty-eight-second chokehold, forty-five seconds of which Mr. Simmons was obviously subdued, and thirteen seconds of which Mr. Simmons was *unconscious*. Video at 12:11:51–12:12:39. MJO Whitaker even intensified the pressure as the chokehold went on. J.A. 62. On top of that, Mr. Simmons was handcuffed and surrounded by four officers. Video at 12:11:54–12:12:39. He posed no threat.

Nor was Mr. Simmons "actively resisting" during the chokehold. *Kingsley*, 576 U.S. at 397. While the video depicted Mr. Simmons beginning to squirm, this was when he was being precariously carried off balance and nearly upside down. Video at 12:11:38–12:11:46. At no point did the officers even appear to struggle with him. 12:11:38–12:11:51. Even if MJO Whitaker had misinterpreted the squirming as resistance, Mr. Simmons's testimony (supported by the video evidence) showed that once MJO Whitaker took handcuffed Mr. Simmons to the floor, he did not resist; to the contrary, he held still for forty-five seconds of the forty-eight-second chokehold (and was unconscious for thirteen). J.A. 62; Video at 12:11:54–12:12:39. And yet MJO Whitaker continued to hold and intensify the chokehold as Mr. Simmons lay motionless—even past the point of unconsciousness. J.A. 62–63.

On top of that, MJO Whitaker failed to make any "effort . . . to temper or to limit the amount of force." *Kingsley*, 576 U.S. at 397. To the contrary, even as Mr. Simmons tried to say, "I can't breathe," MJO Whitaker intensified the chokehold's pressure. J.A. 62. MJO Whitaker had about forty-five seconds' worth of opportunities to release the potentially lethal chokehold. Video at 12:11:54–12:12:39. Instead, he

choked Mr. Simmons unconscious. And he even continued for another thirteen seconds. Video at 12:12:26–12:12:39.

The "extent of [Mr. Simmons's] injury," *Kingsley*, 576 U.S. at 397, further highlights the objective unreasonableness of MJO Whitaker's prolonged chokehold. After being choked unconscious, Mr. Simmons suffered neck pain, back pain, swelling, felt as if his Adam's apple had been crushed, and had difficulty swallowing. J.A. 50–51; J.A. 278–279. In the moment, MJO Whitaker apparently recognized the severity of his actions when he checked Mr. Simmons for a pulse. Video at 12:12:40–12:13:09. Quite simply, a jury could easily find that MJO Whitaker's prolonged chokehold was disproportionate and unnecessary.

This Court can and should therefore hold that MJO Whitaker's actions were objectively unreasonable, in violation of Mr. Simmons's right to be free from excessive force, and vacate summary judgment. *Cf. Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 733–34 (4th Cir. 2013) (holding that an officer used excessive force when repeatedly tasing an individual who was on the ground, restrained by several other officers, and was no longer actively resisting); *Bailey v. Kennedy*, 349 F.3d 731, 744 (4th Cir. 2003) (holding that even if "some degree of force was

justifiable," continuing to use force after the plaintiff was "bound hand and foot and lying face down on the floor" was objectively unreasonable); *United States v. Cowden*, 882 F.3d 464, 469–72, 474 (4th Cir. 2018) (affirming conviction for deprivation of rights based on excessive force and holding that evidence supported a conclusion that the officer's use of force against a handcuffed, nonresistant victim was unconstitutional).[5]

Alternatively, the district court's application of the wrong legal framework is itself sufficient to vacate. *See Dilworth v. Adams*, 841 F.3d 246, 255–56 (4th Cir. 2016) (vacating summary judgment when district court applied an Eighth Amendment framework instead of *Kinglsey* to pretrial detainee's excessive-force claim).

---

[5] *See also Tuuamalemalo v. Greene*, 946 F.3d 471, 477–78 (9th Cir. 2019) ("There is a robust consensus among the circuits that the use of a chokehold on a non-resisting person" is objectively unreasonable); *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 540 (6th Cir. 2015) ("The use of a chokehold on an unresisting–and even initially resistant–detainee violates the Fourteenth Amendment.") (citing *Valencia v. Wiggins*, 981 F.2d 1440, 1447 (5th Cir. 1993)); *accord Tatum v. Robinson*, 858 F.3d 544, 551–52 (8th Cir. 2017); *Est. of Booker v. Gomez*, 745 F.3d 405, 425 (10th Cir. 2014) (holding a reasonable jury could find the prolonged use of a carotid restraint to be excessive and unjustified).

**C. MJO Whitaker's conduct would have violated the Eighth Amendment, if that legal framework applied.**

Even if the district court were correct to apply an Eighth Amendment framework, its analysis was still legally erroneous. Mr. Simmons adduced evidence that would easily support a jury's finding that MJO Whitaker's prolonged chokehold exceeded de minimis force and was motivated by malice.

The Eighth Amendment protects a sentenced inmate's right to be free from unnecessary and wanton applications of force. *Hudson v. McMillian*, 503 U.S. 1, 6–8 (1992). Eighth Amendment excessive-force claims include both an objective and subjective component. *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008). Even assuming such a framework applies to Mr. Simmons's case, he satisfied both components. Summary judgment was therefore improper, by any standard.

**1. Choking Mr. Simmons until he went unconscious easily satisfies the objective component.**

The objective component of an Eighth Amendment excessive-force claim considers whether the officer's use of force was "sufficiently serious." *Brooks*, 924 F.3d at 112. This is expressly "not a high bar." *Dean*, 984 F.3d at 302. Rather, "anything more" than "de minimis or trivial force . . . will suffice." *Id.*

Here, the prolonged chokehold easily surpasses the "de minimis" threshold. This Court has repeatedly held that uses of force less egregious than choking suffice. *See, e.g.*, *Brooks*, 924 F.3d at 112 (use of a taser—nonlethal force designed to cause temporary pain—satisfied the standard); *Dean*, 984 F.3d at 303 (having "no difficulty concluding" that a blast of pepper spray to the face satisfied the standard); *Rios v. Veale*, 648 F. App'x 369, 371 (4th Cir. 2016) (unpublished) (closing cell door's meal-tray trap on inmate's arm satisfied the standard).

And while a plaintiff need not prove an injury to satisfy the Eighth Amendment's objective component, *Dean*, 984 F.3d at 303, such evidence can bolster a plaintiff's showing, *Wilkins v. Gaddy*, 599 U.S. 34, 37 (2010). Here, Mr. Simmons's injuries (including neck and back pain, feeling as if his Adam's apple were crushed, swelling and difficulty swallowing three days after the incident) further confirm that MJO Whitaker's chokehold was more than de minimis force.

### 2. A reasonable jury could find that MJO Whitaker's prolonged chokehold betrayed subjective malice.

The Eighth Amendment's subjective component asks whether MJO Whitaker "acted with a sufficiently culpable state of mind." *Brooks*, 924 F.3d at 112. This inquiry "ultimately turns on whether force was applied

in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (cleaned up); *see also Dean*, 984 F.3d at 295. To determine if there is a triable question about malice, the Court can look to direct and circumstantial evidence. *Dean*, 984 F.3d at 309. Relatedly, the Court can consider the four factors laid out in *Whitley* to infer whether a reasonable juror could find that malice motivated MJO Whitaker's actions. *See* 475 U.S. at 321. Both frameworks confirm the existence of triable fact issues.

> **a.** **Circumstantial evidence created a triable fact issue as to whether MJO Whitaker acted maliciously.**

At least four categories of circumstantial evidence, properly viewed through the lens of Rule 56, demonstrate a jury question about malice.

**(1)** First and most importantly, the length of the chokehold would support a jury's finding that MJO Whitaker applied force beyond the point of necessity, which demonstrates malice. This Court recognizes that the "justification for using protective force expires at the very moment a threat is neutralized." *Dean*, 984 F.3d at 305. Accordingly, continuing to

use force even seconds after an inmate has been subdued and restrained indicates malicious intent. *Id.* at 302.

To illustrate, *Dean* held that a reasonable jury could infer that an officer acted with an impermissible motive when he pepper sprayed an "already restrained" inmate who was "lying on his back with his cuffed arms beneath him" and had an officer "on top of him." 984 F.3d at 304–05 (cleaned up). Even though "merely seconds" before, Dean had "head-butted" an officer, this Court held that a reasonable jury could still find that the sustained blast of pepper spray was "unnecessary and unjustified" because any legitimate need for force had expired. *Id. Dean* recognized that force can become excessive and unjustified in a matter of seconds. *Id.* at 305–06 (collecting cases); *accord Brooks*, 924 F.3d at 114.

So too here. Any purported justification for MJO Whitaker's use of force expired when—or at least shortly after—Mr. Simmons hit the ground, handcuffed and nonresistant. Video at 12:11:54–12:12:39. While officers receive deference when they must make "split-second judgements," *Dean*, 984 F.3d at 305, here, MJO Whitaker strangled Mr. Simmons for forty-eight seconds—much longer than the few seconds that were enough to create a jury question in *Dean*. *Id.* Moreover, three

officers had their hands on Mr. Simmons while a fourth stood by. Video at 12:12:03–12:12:15. And unlike Mr. Dean, Mr. Simmons never assaulted the officers, arguably making a jury even more likely to find excessive force here than on remand in *Dean*. Recognizing that the justification for force can expire quickly is especially important in cases involving chokeholds, which commensurately enhance the risk of death the longer they are held.[6]

**(2)** A jury could also infer malice from the fact that MJO Whitaker's sustained chokehold prevented Mr. Simmons from speaking or complying with the order to go to his cell. This Court has recognized that a reasonable jury could find malice when officers order compliance while applying force that makes compliance impossible. *See Brooks*, 924 F.3d at 114–15 (holding that ordering an inmate to stand up when he was unable to comply because he was just tased could demonstrate malice).

---

[6] *See, e.g.*, *Valencia*, 981 F.2d at 1447 (predating *Kinglsey* and holding that choking a pretrial detainee who had stopped resisting could demonstrate malice); *Hanson v. Madison Cnty. Det. Ctr.*, 736 F. App'x 521, 533 (6th Cir. 2018) (unpublished) ("[A]ssuming [plaintiff] was choked after being subdued, a jury could reasonably find that [defendant] used excessive force." (cleaned up)).

Similarly here, while MJO Whitaker had Mr. Simmons locked in the chokehold, he asked, "Are you going to comply?" J.A. 62. It is unclear what MJO Whitaker meant, but what is clear is that Mr. Simmons could not verbally respond or ask for clarification. J.A. 62. A reasonable jury could therefore conclude that MJO Whitaker acted with a malicious mental state under these circumstances.

**(3)** Mr. Simmons's initial refusal to go to his housing unit would also support a finding that MJO Whitaker sought to punish Mr. Simmons, demonstrating malice. An inmate's insubordination can serve as circumstantial evidence that an officer acted with malicious intent. *See, e.g.*, *Brooks*, 924 F.3d at 115–16 (holding that the very fact of an inmate's verbal threats and intransigence could support a finding of malice and not a good-faith attempt to restore order); *see also Dean*, 984 F.3d at 306–07 ("[A] jury . . . could infer that the multiple officers confronting a handcuffed Dean in the supply closet in fact did not fear for their safety but instead intended to punish Dean for his intransigence.").

Here, the officers testified that Mr. Simmons sat down and disobeyed their orders to walk to his cell. J.A. 38; J.A. 40; J.A. 44; J.A. 266; J.A. 268; J.A. 272; Video at 12:09:55–12:11:32. And Officer Hull

reported hearing Mr. Simmons say, "[I]f any of you touch me, I will bite you." J.A. 41; J.A. 269. The district court interpreted this conduct as support for its conclusion that MJO Whitaker was justified, J.A. 331, but according to *Brooks* and *Dean*, that was the wrong way to draw the inference on summary judgment. Rather, the district court should have recognized that a reasonable jury could see Mr. Simmons's insubordination as evidence that MJO Whitaker acted maliciously when he applied and held the chokehold.

**(4)** Finally, the correctional officers' statements and the consequences they faced immediately following the choking event provide even more circumstantial evidence of malice. When Mr. Simmons regained consciousness, he heard Sergeant Brown ask MJO Whitaker, "What you do that for?" J.A. 63. A reasonable jury could view this as evidence that MJO Whitaker lacked a good-faith penological motivation for choking Mr. Simmons. Additionally, MJO Whitaker was forced to resign and Sergeant Brown was demoted. J.A. 71. MJO Whitaker also became the subject of criminal proceedings. J.A. 285–289. Construing these facts most favorably to Mr. Simmons, a reasonable jury could find that MJO Whitaker acted maliciously.

### b. The *Whitley* factors also demonstrate a triable fact issue about MJO Whitaker's malice.

The circumstantial evidence described above is more than enough for a reasonable jury to find that MJO Whitaker acted maliciously when he choked Mr. Simmons beyond the point of unconsciousness. The *Whitley* factors add even more support for such an inference.

Under *Whitley*, this Court considers four factors: (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used," (3) "the extent of any reasonably perceived threat that the application of force was intended to quell," and (4) "any efforts made to temper the severity of a forceful response." *Iko*, 535 F.3d at 239 (quoting *Whitley*, 475 U.S. at 321). The *Whitley* factors map neatly onto the *Kinglsey* factors described above. *Compare id.*, *with Kingsley*, 576 U.S. at 397. Accordingly, for the same reasons explained above, *see supra* Argument I.B.2, the *Whitley* factors confirm ample support to find that MJO Whitaker acted maliciously.

The first three *Whitley* factors favor Mr. Simmons. Mr. Simmons's conduct did not justify MJO Whitaker's sustained chokehold, as explained above. MJO Whitaker continued to choke Mr. Simmons long

after any threat to order had subsided. Viewing the facts favorably to Mr. Simmons, under the first three *Whitley* factors, a reasonable jury could easily find that MJO Whitaker acted maliciously. *See Brooks*, 924 F.3d at 114–17; *see also Dean*, 984 F.3d at 295.

The fourth *Whitley* factor also cuts against the district court's decision. MJO Whitaker made no attempt to temper the severity of the force he chose to apply—to the contrary, he intensified the pressure. A reasonable jury could find that this betrayed a malicious intent. In sum, the district court erred when it held that no reasonable jury could find that MJO Whitaker used excessive force.

### D. A reasonable jury could find that Sergeant Brown and Officer Hull knew that MJO Whitaker was choking Mr. Simmons, could have intervened, and failed to do so.

The district court did not analyze the rest of Mr. Simmons's bystander-liability claim because it concluded as a matter of law that there was no choking, and therefore no predicate constitutional violation. That was error—under any legal framework—as explained above. Accordingly, this Court should vacate and remand so the district court can decide the entirety of Mr. Simmons's bystander-liability claim. *See Brooks*, 924 F.3d at 112 n.3 (vacating summary judgment and "leaving

the matter for the district court on remand" when the district court did not consider bystander liability beyond the predicate violation).

Mr. Simmons adduced evidence to support all the elements of his bystander-liability claims. Bystander liability flows from a violation of a constitutional right under § 1983 whenever an officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002).

There is no dispute that Sergeant Brown and Officer Hull were present throughout the chokehold. J.A. 40–45; J.A. 268–272; J.A. 286. In fact, they were mere inches away. Video at 12:11:54–12:12:39. Officer Hull remained near Mr. Simmons's right shoulder and neck for the duration of the chokehold, Video at 12:11:56–12:12:39; J.A. 41; J.A. 269, and Sergeant Brown moved to Mr. Simmons's left side as the chokehold continued. Video at 12:12:15–12:12:17. While the district court (erroneously) concluded that they did not witness the choking, the video squarely shows that both defendants watched the choking unfold. Video at 12:11:51–12:12:39. A reasonable jury would therefore have ample

support to find that Sergeant Brown and Officer Hull were aware that Mr. Simmons was being subjected to excessive force.

This is not a case where the excessive force was so fleeting as to foreclose the possibility of intervention. *See, e.g.*, *Dukes v. Richards*, 2009 WL 9056101, at *5 (E.D.N.C. Aug. 27, 2009), *aff'd*, 366 F. App'x 467 (4th Cir. 2010) (finding no reasonable opportunity to intervene when an officer suddenly kicked the plaintiff). To the contrary: the video shows that for about forty-five seconds, Sergeant Brown and Officer Hull simply watched MJO Whitaker choke Mr. Simmons. Video at 12:11:54–12:12:39. They could have intervened at any time. Yet they did not stop MJO Whitaker, nor do they claim to have tried.

On this evidentiary record, there are triable issues of fact about Sergeant Brown and Officer Hull's bystander liability. Accordingly, this Court should vacate summary judgment and remand.

## II. Sergeant Brown and Officer Hull are not entitled to affirmance based on qualified immunity.

Sergeant Brown and Officer Hull have waived any qualified-immunity defense. They may not assert it here as an alternative ground for affirming summary judgment.

This Court has held that "qualified immunity is an affirmative defense, and the burden of pleading it 'rests with the defendant.'" *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). Accordingly, "qualified immunity cannot be asserted for the first time on appeal." *Sales v. Grant*, 224 F.3d 293, 296 (4th Cir. 2000).

Here, Officer Hull and Sergeant Brown did not assert the affirmative defense of qualified immunity in the district court. J.A. 31–37; J.A. 259–265. They have therefore waived the argument as an alternative ground for affirmance. *See Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 226 (4th Cir. 1997).

Even if Officer Hull and Sergeant Brown had raised the defense, they would not have been entitled to summary judgment on qualified-immunity grounds. Qualified immunity bars § 1983 liability for constitutional violations only if the right at issue "was not so 'clearly established' that 'a reasonable official would understand that what he is doing violates that right'" at the time of the violation. *Thompson v. Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The Supreme Court has held that "officials can still be

on notice that their conduct violates established law even in novel factual circumstances" and has rejected any requirement that cases be "fundamentally similar." *Hope*, 536 U.S. at 741.

Here, Mr. Simmons's right to be free from excessive force was clearly established under both the Fourteenth and Eighth Amendments. *See Mays v. Sprinkle*, 992 F.3d 295, 300–01 (4th Cir. 2021) (holding that it was clearly established as of 2016 that pretrial detainees have a Fourteenth Amendment due process right to be free from any form of punishment); *see also Dean*, 984 F.3d at 310 ("[I]t was clearly established in 2015—and for many years before that—that inmates have a right to be free from pain inflicted maliciously and in order to cause harm."); Well before 2019, the Court had also recognized a clearly established right to have an officer intervene in the face of excessive force. *See Thompson*, 878 F.3d at 109–10.

In sum, Officer Hull and Sergeant Brown waived qualified immunity. But even if they hadn't, Mr. Simmons's Fourteenth (and Eighth) Amendment rights were clearly established. They therefore had fair notice that their actions and omissions violated those rights when

they failed to interrupt MJO Whitaker's strangulation of Mr. Simmons. Accordingly, they are not entitled to qualified immunity.

## III. The district court abused its discretion in dismissing MJO Whitaker.

A district court abuses its discretion when it sua sponte dismisses a defendant for lack of service without notifying a plaintiff of his opportunity to show cause. *See* Fed. R. Civ. P. 4(m); *Boone v. Moore*, 844 F. App'x 667, 668 (4th Cir. 2021) (unpublished). That is exactly what happened here.

On December 15, 2021, the court issued an order giving Mr. Simmons twenty-one days to provide an address at which to serve MJO Whitaker or "show cause, if any, why this civil action should not be dismissed." J.A. 313–314. But the court sent that show-cause order to the wrong address; it was returned to the court undeliverable. J.A. 315–317.

More than two months before the district court tried to mail its show-cause order, Mr. Simmons had duly notified the court that his address had changed to 5764 S. Ottawa Road. J.A. 305. Despite this, the district court sent the order to "Suite B, 1811 King Street"—even though pro se Mr. Simmons had previously informed the court that his "address

is no longer 1811 King Street." J.A. 303–304; J.A. 315–317.[7] In other words, the district court did not send this order to Mr. Simmons's "last known address." Fed. R. Civ. P. 5(b)(2)(C). Nor did it purport to send him notice in some other way—despite the docket's indication that its December 15 show-cause order was never delivered. J.A. 315–317.

Still, the district court proceeded to dismiss MJO Whitaker, citing Mr. Simmons's failure to respond to the (undelivered) show-cause order without acknowledging that he never received it. J.A. 318. This was an abuse of discretion; Mr. Simmons never received notice of his opportunity to show cause under the order. *Cf. Shuler v. Orangeburg Cnty. Sheriff's Dep't*, 71 F.4th 236, 246 (4th Cir. 2023) (holding that a party did not receive notice from an order that returned to the court as undeliverable). This Court has recognized that "the plain language of Rule 4(m) required the district court to provide notice to [the plaintiff] and offer[] him an

---

[7] The address the district court used, "Suite B, 1811 King Street," was never a correct address for Mr. Simmons. Rather, it appears to be a combination of two different addresses Mr. Simmons had submitted to the district court, both of which were outdated at the time the district court sent its December 15 order. *See* J.A. 256 ("800 Williamsburg Ave., Ste. B"); J.A. 291–292 ("1811 King Street").

opportunity to show cause before sua sponte dismissing the complaint."
*Boone*, 844 F. App'x at 668. The district court failed to do so here.

While the district court issued orders for summonses explaining that MJO Whitaker would be dismissed if he were not served within 90 days, J.A. 27–28; J.A. 254–255; J.A. 301–302, that did not discharge its obligation to properly notify Mr. Simmons of his opportunity to show cause under Rule 4(m). *See Boone*, 844 F. App'x at 668 (holding under similar circumstances that the district court abused its discretion under Rule 4(m) even though it "informed [the plaintiff] that failure to provide service within 90 days would lead to dismissal").

Accordingly, the district court abused its discretion under the plain language of Rule 4(m) by dismissing MJO Whitaker pursuant to the undelivered show-cause order. *Id.* This Court should therefore vacate the district court's dismissal and remand.

## CONCLUSION

For these reasons, this Court should vacate the decision below and remand for further proceedings.

Respectfully submitted,

/s/ Steven J. Alagna

Steven J. Alagna
*Counsel of Record*
*Supervising Attorney*

Alice Gorman
Patrick Northrup
Marc Poissonnier
Zachariah Taylor
*Student Advocates*

WASHINGTON UNIVERSITY SCHOOL OF LAW
Appellate Clinic
One Brookings Drive
MSC 1120-250-102
St. Louis, MO 63130
(314) 935-7238
salagna@wustl.edu

*Counsel for Appellant*

Dated: December 18, 2023

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Simmons respectfully requests oral argument. This case presents important questions regarding the summary-judgment standard in a case of bystander liability where a video and documentary evidence comprise the record. The answers to these questions have serious implications for the vindication of Mr. Simmons's constitutional rights and the rights of similarly situated plaintiffs. Oral argument would assist the Court in answering these questions.

## CERTIFICATE OF COMPLIANCE

This brief complies with type-volume limits because it contains 8,772 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). It complies with typeface and type-style requirements because it was typed in size-14 Century Schoolbook font in Microsoft Word for Microsoft 365.

/s/ Steven J. Alagna

## CERTIFICATE OF SERVICE

I certify that on December 18, 2023, I electronically filed the foregoing Opening Brief of Appellant Johnnie R. Simmons, Jr. via this Court's CM/ECF system, which will send notice of such filing to counsel of record in the above-captioned case.

/s/ Steven J. Alagna