No. 22-6233

_____

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

_____

**JOHNNIE R. SIMMONS, JR.**
Plaintiff-Appellant,

**v.**

**R. WHITAKER, ET AL.,**
Defendants-Appellees.

_____

**Appeal from the United States District Court
for the Eastern District of Virginia**

_____

**REPLY BRIEF OF APPELLANT JOHNNIE R. SIMMONS, JR.**

_____

Steven J. Alagna
*Counsel of Record*
*Supervising Attorney*

Jacob Cogdill
Ashvanika Dodwani
John Whitney
*Student Advocates*

WASHINGTON UNIVERSITY SCHOOL OF LAW
Appellate Clinic
One Brookings Drive, MSC 1120-250-102
St. Louis, MO 63130
(314) 935-7238
salagna@wustl.edu

*Counsel for Appellant Johnnie R. Simmons, Jr.*

February 15, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................iv

ARGUMENT ..............................................................................................1

I.    The district court improperly disregarded Mr. Simmons's account
      and a reasonable jury crediting his testimony could find that
      Sergeant Brown and Officer Hull unconstitutionally failed to
      intervene in the face of MJO Whitaker's excessive chokehold. ......1

      A.   The district court flipped the summary-judgment standard
           upside down, reviewing the evidence in the light most
           favorable to Appellees and drawing factual inferences
           against Mr. Simmons. ..............................................................2

      B.   A reasonable jury could find that MJO Whitaker's prolonged
           chokehold was unjustified and disproportionate, which
           constitutes excessive force under any legal framework. ........6

           1.    A reasonable jury could find facts showing that MJO
                 Whitaker's force was unconstitutionally excessive
                 under the Fourteenth Amendment. ..............................7

           2.    A reasonable jury could find that MJO Whitaker's
                 conduct was excessive in a way that violated the
                 Eighth Amendment, if that legal framework applied. 10

      C.   A reasonable jury could find that Sergeant Brown and
           Officer Hull knew that MJO Whitaker was choking Mr.
           Simmons, could have intervened, and failed to do so. .........12

      D.   Appellees' Local Rule 56(B) and "hearsay" arguments cannot
           rescue the district court's misapplication of the summary-
           judgment standard. ...............................................................14

           1.    This Court should not affirm on the alternative
                 grounds of the district court's local rules' "specifically
                 captioned section" provision..........................................14

           2.    Mr. Simmons's affidavits provide sufficient admissible
                 testimony to create genuine disputes of material facts.
                 ......................................................................................16

II.   This Court should vacate and remand the issue of MJO
      Whitaker's dismissal. ....................................................................19

CONCLUSION ......................................................................... 21
CERTIFICATE OF COMPLIANCE ........................................ 23
CERTIFICATE OF SERVICE ................................................ 23

iii

# TABLE OF AUTHORITIES

## Cases

*Bailey v. Kennedy*, 349 F.3d 731 (4th Cir. 2003) ......................................8

*Brooks v. Johnson*, 924 F.3d 104 (4th Cir. 2019)................................. 2, 10

*Dean v. Jones*, 984 F.3d 295 (4th Cir. 2021).............................................5

*Dilworth v. Adams*, 841 F.3d 246 (4th Cir. 2016)............................. 10, 11

*Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954
(4th Cir. 1996)................................................................................18

*Goodman v. Diggs*, 986 F.3d 493 (4th Cir. 2021)....................................15

*Greene v. Holloway*, No. 99-7380, 2000 WL 296314
(4th Cir. 2000)................................................................................21

*Harris v. Pittman*, 927 F.3d 266 (4th Cir. 2019) ......................................5

*Iko v. Shreve*, 535 F.3d 225 (4th Cir. 2008) ............................................10

*In re Richards*, No. 95-1374, 1999 WL 26913
(4th Cir. 1999)................................................................................21

*Kingsley v. Hendrickson*, 576 U.S. 389 (2015) ................................. 7, 8, 9

*Martin v. Duffy*, 977 F.3d 294 (4th Cir. 2020) ........................................15

*Mays v. Sprinkle*, 992 F.3d 295 (4th Cir. 2021)........................................7

*Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723
(4th Cir. 2013)..................................................................................9

*Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021)................................... 15, 16

iv

*Randall v. Prince George's Cnty.*, 302 F.3d 188
(4th Cir. 2002)................................................................................... 12

*Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80 (1943) .................. 11

*Shirley v. Staubs*, 812 F. App'x 162 (4th Cir. 2020) ............................... 20

*Thompson v. Virginia*, 878 F.3d 89 (4th Cir. 2017)................................ 12

*Witt v. W.V. State Police, Troop 2*, 633 F.3d 272 (4th Cir. 2011) ............. 4

## Statutes and Rules

28 U.S.C. § 1915(d).................................................................................. 21

E.D. Va. Local Rule 56(B) ....................................................................... 15

Fed. R. Evid. 801(d)(2)............................................................................. 17

**ARGUMENT**

**I.** **The district court improperly disregarded Mr. Simmons's account and a reasonable jury crediting his testimony could find that Sergeant Brown and Officer Hull unconstitutionally failed to intervene in the face of MJO Whitaker's excessive chokehold.**

Appellees do not explain how the video evidence indisputably disproves Mr. Simmons's testimony that he was choked while Sergeant Brown and Officer Hull looked on. Nor can they, as the video affirmatively supports Mr. Simmons's account of what happened. Instead, Appellees repeat the district court's erroneous finding (of a disputed fact) that Mr. Simmons was not choked, despite his sworn testimony and video evidence to the contrary. In short, Appellees cannot escape genuine disputes of material fact, so they merely invite the Court to take their word for it about what happened. But that is not how summary judgment works. Properly crediting Mr. Simmons's account, a reasonable jury could easily find that MJO Whitaker choked Mr. Simmons while Sergeant Brown and Officer Hull failed to intervene.

Tellingly, instead of engaging with the evidence, Appellees invoke a local-rules technicality and an unsupported, blanket assertion of "hearsay." But at bottom, their arguments cannot rehabilitate the district

1

court's core summary-judgment error. This Court should therefore vacate and remand.

### A. The district court flipped the summary-judgment standard upside down, reviewing the evidence in the light most favorable to Appellees and drawing factual inferences against Mr. Simmons.

The district court could not properly enter summary judgment unless, "taking the facts in the best light for [Mr. Simmons and] . . . drawing all reasonable inferences in his favor," no reasonable jury could have returned a verdict for him. *Brooks v. Johnson*, 924 F.3d 104, 111–12 (4th Cir. 2019). As explained in the Opening Brief, a reasonable jury could easily find that MJO Whitaker choked Mr. Simmons unconscious while Sergeant Brown and Officer Hull watched. The district court's conclusion to the contrary was therefore incorrect.

In sworn affidavits, Mr. Simmons consistently testified that MJO Whitaker choked him unconscious, that Sergeant Brown and Officer Hull witnessed MJO Whitaker's excessive force from nearby vantage points, and that they failed to intervene. *See, e.g.*, J.A. 65 ("They all stood and watched him choke me"); *see also* J.A. 51; J.A. 60–77; J.A. 286–289. The video evidence also supports Mr. Simmons's account, clearly depicting MJO Whitaker wrapping his arm around Mr. Simmons's neck, taking

him to the floor, and holding him there for forty-eight seconds while Mr. Simmons's body goes limp and Brown and Hull look on. Video at 12:11:51–12:12:39.

Despite this, at every step along the way, the district court misconstrued the factual record in the light *least* favorable to Mr. Simmons, contrary to what Rule 56 requires. For instance, the district court noted that MJO Whitaker "placed his right arm across the right side of [Mr. Simmons's] neck," yet still concluded that no juror could find that a choking occurred. J.A. 324; J.A. 330–331. It recognized Mr. Simmons's neck sustained enough force to retain red marks three days after the incident, but it unnecessarily concluded (in favor of Appellees and in the absence of any evidence in support) that Mr. Simmons could not have been choked because there was no evidence of any marks on the *front* of his throat. J.A. 331. The district court even went so far as to resolve inconsistent testimony *among Appellees* in their favor, finding Mr. Simmons's "pants were not soiled or wet when he stood up" despite Sergeant Brown's affidavit directly to the contrary. *Compare* J.A. 325, *with* J.A. 272 (Sergeant Brown's affidavit, testifying that he "saw a wet spot on [Mr. Simmons's] pants").

It goes without saying that a defendant wrapping his arm around the plaintiff's neck—leaving red marks that lasted three days later—is hardly "inconsistent" with a chokehold. A reasonable jury could easily look at this same evidence and reach the opposite conclusion—that Mr. Simmons was in fact choked.

On top of that, entirely (and erroneously) absent from the district court's analysis was Mr. Simmons's sworn statements—made with personal knowledge—about what happened, *see* J.A. 60–75; J.A. 286–289, or the medical records showing that Mr. Simmons complained of a crushed Adam's apple and throat pain when he presented with red marks on his neck, J.A. 51; J.A. 279. Nor did (or could) the district court explain how the video evidence indisputably contradicted Mr. Simmons's testimony that he was choked while Brown and Hull watched. *See Witt v. W.V. State Police, Troop 2*, 633 F.3d 272, 277 (4th Cir. 2011) (holding that video evidence that "does not blatantly contradict [the plaintiff's] account of the facts . . . does not establish that the officers are entitled to summary judgment" (cleaned up)).

Appellees do not explain how summary judgment could be proper when considering the evidence the way Rule 56 requires. Instead, they

4

insist the district court was right to take their word for it. Betraying that the district court engaged in factfinding at the summary-judgment stage, they assert that Mr. Simmons "cannot counter the district court's findings by relying on the purported 'facts' contained in his sworn submissions and imposing those 'facts' so as to interpret the video tape in his favor." Appellees' Br. 5. But Rule 56 required exactly that.

The district court should have viewed the video in a light most favorable to Mr. Simmons and his sworn testimony. *See Dean v. Jones*, 984 F.3d 295, 308 (4th Cir. 2021) (vacating summary judgment after construing the video "in the light most favorable to [the nonmovant]" because "a jury could view the video evidence as resolving the discrepancy in [the nonmovant's] favor"). The proper inquiry at this stage was not whose account the district court found more credible, but whether any reasonable jury could find for the nonmovant, Mr. Simmons.

As explained in the Opening Brief (at 20–24), the video "does not abrogate the proper summary judgment analysis, which . . . usually means adopting . . . the plaintiff's version of the facts." *Harris v. Pittman*, 927 F.3d 266, 276 (4th Cir. 2019) (cleaned up); *id.* at 275–76 (holding that video evidence can justify summary judgment only when it "utterly

discredit[s]" the nonmovant's account, which is the rare "exception, not the rule"). Here, far from utterly discrediting Mr. Simmons's testimony, the video supports it, showing that MJO Whitaker held Mr. Simmons in a prolonged chokehold, even past the point where Mr. Simmons's body goes limp. Video at 12:11:51–12:12:39. Crediting his sworn affidavits and viewing the video evidence in the light most favorable to him, a reasonable jury could find for Mr. Simmons. Summary judgment was therefore incorrect.

**B. A reasonable jury could find that MJO Whitaker's prolonged chokehold was unjustified and disproportionate, which constitutes excessive force under any legal framework.**

Appellees do not dispute that MJO Whitaker used force against Mr. Simmons as he wrapped his right arm around Mr. Simmons's neck, leaving marks that lasted three days later. Appellees' Br. 13–14. Instead, they repeat the district court's erroneous conclusion that MJO Whitaker's force was necessary and reasonable. *Id.* But the district court could not have reached that conclusion without improperly deciding material facts that were in dispute. This is true under both the Fourteenth Amendment framework for pretrial detainees like Mr. Simmons and the Eighth Amendment framework the district court erroneously invoked.

### 1. A reasonable jury could find facts showing that MJO Whitaker's force was unconstitutionally excessive under the Fourteenth Amendment.

Accepting Mr. Simmons's account that he was not resisting and unconscious, a reasonable jury could find that MJO Whitaker's chokehold constituted force beyond what was necessary, in violation of Mr. Simmons's Fourteenth Amendment right to be free from excessive force. *See Mays v. Sprinkle*, 992 F.3d 295, 300–01 (4th Cir. 2021) (holding that pretrial detainees' Fourteenth Amendment due-process right to be free from any form of punishment was clearly established). Because Mr. Simmons was a pretrial detainee, the *Kingsley* factors govern this analysis. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015).

Appellees do not analyze the individual *Kingsley* factors, instead opting to repeat the district court's euphemistic account of what happened based on inferences it incorrectly drew against Mr. Simmons. *See* Appellees' Br. 13–14. Approaching the analysis as Rule 56 requires shows that summary judgment was improper because there are genuine factual disputes at the heart of each *Kingsley* factor.

First, a jury considering the "relationship between the need for the use of force and the amount of force used" could certainly find on this

record that MJO Whitaker's force was not justified. *Kingsley*, 576 U.S. at 397. If the force was necessary only to prevent Mr. Simmons from falling and injuring himself, such force became unnecessary and unjustified when the legitimate need for force expired—that is, the moment handcuffed Mr. Simmons was on the ground and nonresistant, surrounded by three officers. *See Bailey v. Kennedy*, 349 F.3d 731, 744 (4th Cir. 2003) (holding that even if "some degree of force was justifiable," continuing to use force after the plaintiff was "bound hand and foot and lying face down on the floor" was disproportionate). But MJO Whitaker maintained the chokehold and even continued to do so after Mr. Simmons tried to state that he could not breathe, lost consciousness, went limp, and laid motionless on the floor. J.A. 62–63; Video at 12:11:54–12:12:39. A reasonable jury could find on this record that MJO Whitaker's prolonged chokehold went well beyond what was necessary.

Similarly, a jury could find that MJO Whitaker's force was disproportionate to any "threat [he] reasonably perceived." *Kingsley*, 576 U.S. at 397. Contrary to Appellees' argument, there were multiple points in time at which a reasonable jury could conclude Mr. Simmons did not present any threat to order or security, whether it was when he hit the

ground handcuffed and surrounded by officers, when he was demonstrably nonresistant and motionless, or certainly when he went unconscious. *See Meyers v. Baltimore Cnty., Md.*, 713 F.3d 723, 733–34 (4th Cir. 2013) (reversing summary judgment because a jury could find that repeatedly tasing an individual who was on the ground, restrained by several other officers, and was no longer actively resisting was excessive, even if initial force may have been justified).

Appellees wholesale ignore the remaining *Kingsley* factors even though there is a material dispute whether any effort was made to temper the amount of force (Mr. Simmons testified that MJO Whitaker *intensified* the force, J.A. 62), whether Mr. Simmons was actively resisting or posing a threat to MJO Whitaker (the video shows he was not, 12:11:54–12:12:39), and the extent of Mr. Simmons's injuries (unconsciousness, red marks on his neck days later, neck and back pain, and feeling a crushed Adam's apple, J.A. 51; J.A. 279). *Kingsley*, 576 U.S. at 397. In any event, these sorts of factual determinations at the heart of the *Kingsley* factors are best left to a jury.

Alternatively, the district court's explicit application of an incorrect legal framework—which Appellees don't deny—is reason enough to

vacate summary judgment and remand. *See Dilworth v. Adams*, 841 F.3d 246, 255–56 (4th Cir. 2016) (vacating summary judgment when district court applied an Eighth Amendment framework instead of *Kingsley* to pretrial detainee's excessive-force claim).

> **2.** **A reasonable jury could find that MJO Whitaker's conduct was excessive in a way that violated the Eighth Amendment, if that legal framework applied.**

Even under an Eighth Amendment analysis, a reasonable jury could find that MJO Whitaker's force was more than de minimis and motivated by malice, rendering it unconstitutionally excessive. Eighth Amendment excessive-force claims include both an objective and subjective component. *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).

As stated in the Opening Brief (at 31–32), a reasonable jury could find that MJO Whitaker's prolonged chokehold was "sufficiently serious" and easily surpassed the "de minimis" threshold under the objective component. *Brooks*, 924 F.3d at 112. Appellees do not argue otherwise.

Similarly, a jury could also find MJO Whitaker's prolonged chokehold was motivated by malice, satisfying the subjective component. *See id.* at 112–13. As explained in the Opening Brief (at 33–39), the *Whitley* factors and other circumstantial evidence, including the duration

of the chokehold, Mr. Simmons's inability to respond to or comply with MJO Whitaker's orders due to the chokehold, MJO Whitaker's apparent intent to inflict punishment upon Mr. Simmons, and the subsequent consequences faced by MJO Whitaker, all could lead a jury to conclude that MJO Whitaker acted with malicious intent. Appellees offer no substantive response to these points.

Because the record shows multiple factual disputes connected to the Eighth Amendment's objective and subjective components, summary judgment was inappropriate—even under the legal framework the district court was wrong to apply.

Appellees suggest that judicial efficiency requires this Court to affirm the district court's erroneous Eighth Amendment reasoning because it was close enough to a Fourteenth Amendment framework. Appellees' Br. 11–12. But as noted above, this Court has vacated summary judgment for this very error. *See Dilworth*, 841 F.3d at 255. And in any event, judicial efficiency does not allow a court to usurp the role of a jury, as Appellees' own cited case on this point shows. *See* Appellees' Br. 11 (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 88 (1943) (noting that judicial efficiency can't displace the "familiar

appellate procedure that where the correctness of the lower court's decision depends upon a determination of fact which only a jury could make but which has not been made, the appellate court cannot take the place of the jury.")). While the Fourteenth and Eighth Amendments may share comparable factors for assessing excessive force, the district court here erred under either framework.

## C. A reasonable jury could find that Sergeant Brown and Officer Hull knew that MJO Whitaker was choking Mr. Simmons, could have intervened, and failed to do so.

A reasonable jury could find that Sergeant Brown and Officer Hull knew that MJO Whitaker was violating Mr. Simmons's constitutional rights, had an opportunity to stop the violation, and chose not to act. *See Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). Accordingly, summary judgment was unavailable to them as liable bystanders.

Appellees offer no response or explanation for the evidence that Sergeant Brown and Officer Hull were present throughout the chokehold and were mere inches away. *See* J.A. 40–45; J.A. 268–272; J.A. 286; Video at 12:11:56–12:12:39; *cf. Thompson v. Virginia*, 878 F.3d 89, 109–10 (4th Cir. 2017) ("[A]n officer who is present at the scene and who fails to take

reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance.").

Instead, Appellees rely entirely on Sergeant Brown and Officer Hull's affidavits that they did not witness any choking or urine on Mr. Simmons. Appellees' Br. 10–11. *But see* J.A. 44; J.A. 272 (Sergeant Brown's affidavit testifying that he observed "a wet spot on plaintiff's pants"). These purported facts are hardly undisputed, given Mr. Simmons's testimony, the jail's medical records, and the video evidence. The district court could not properly resolve this factual dispute, assess credibility, or otherwise weigh this competing evidence.

Even in the face of Sergeant Brown and Officer Hull's statements that they did not witness MJO Whitaker choking Mr. Simmons, a jury would be left with multiple unresolved questions: Why did Sergeant Brown approach MJO Whitaker and tap him on the shoulder repeatedly? Video at 12:12:16–12:12:35. Why did Sergeant Brown ask MJO Whitaker "What did you do that for"? J.A. 63. Why did Sergeant Brown admit in his affidavit that he "saw a wet spot on [Mr. Simmons's] pants"? J.A. 43; J.A. 272. Why did Sergeant Brown and Officer Hull have to prop up Mr. Simmons's body up as he regained consciousness? Video at 12:13:18–

13

12:13:23; J.A. 63. Appellees may dispute one or all of these facts, but all the more reason for a jury to decide. Because a reasonable jury could credit Mr. Simmons's account when considering material issues like these, summary judgment should be vacated.

### D. Appellees' Local Rule 56(B) and "hearsay" arguments cannot rescue the district court's misapplication of the summary-judgment standard.

Rather than engage with the evidence from which a reasonable jury could find for Mr. Simmons, Appellees instead suggest that he should be deemed to have admitted all the facts in dispute, or that all of his sworn testimony should be excluded as "hearsay." Appellees' Br. 8–10. They're wrong for multiple reasons.

### 1. This Court should not affirm on the alternative grounds of the district court's local rules' "specifically captioned section" provision.

Appellees reach to invoke the district court's Local Rule 56(B)'s provision that the district court "may assume that facts identified by the moving party in its listing of material facts are admitted" if a nonmovant does not "controvert[]" each fact in "a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on

to support the facts alleged to be in dispute." E.D. Va. Local Rule 56(B). Importantly, the district court below did not purport to deem any facts admitted under this rule. *See* J.A. 318–332. Affirming on this alternative basis would be inappropriate many times over.

First, Appellees' post-hoc, alternative defense of the judgment is inconsistent with the liberal treatment typically given to pro se litigants like Mr. Simmons. *See Martin v. Duffy*, 977 F.3d 294, 298 (4th Cir. 2020) ("We read the pleadings of a pro se plaintiff liberally and interpret them to raise the strongest arguments that they suggest." (cleaned up)).

This Court has held that flexibility for pro se litigants must extend to similar technical noncompliance. *See, e.g.*, *Pledger v. Lynch*, 5 F.4th 511, 526–27 (4th Cir. 2021) (vacating summary judgment and holding that the district court abused its discretion when a pro se plaintiff "put the district court on fair notice of a potential dispute as to the sufficiency of the summary judgment record"); *accord Goodman v. Diggs*, 986 F.3d 493, 500–01 (4th Cir. 2021). Similarly, even if Mr. Simmons's pro se submissions lacked "a specifically captioned section" listing disputed material facts per the Local Rule, the relevant disputed facts are apparent and obvious. *See, e.g.*, J.A. 65.

Further, Mr. Simmons complied with the instructions in the *Roseboro* notices he received. *See Pledger*, 5 F.4th at 525 ("For nearly fifty years, [*Roseboro*] has required that district courts, before awarding summary judgment to a defendant, notify a pro se plaintiff . . . of his obligations . . . ."). Mr. Simmons's *Roseboro* notices instructed him simply to "identify all facts . . . with which [he] disagree[d]" and to "set forth [his] version of the facts by offering affidavits . . . or by filing sworn statements." Dist. Ct. Dkt. Nos. 33, 98. That is exactly what Mr. Simmons did. *See* J.A. 60–75; J.A. 286–289.

Accordingly, affirming summary judgment on the technicality of the local rule's "specifically captioned section" provision would be out of step with this Court's directives regarding pro se litigants, especially in light of Mr. Simmons's *Roseboro* notices. This Court should therefore decline Appellees' invitation to affirm on these alternative grounds.

### 2. Mr. Simmons's affidavits provide sufficient admissible testimony to create genuine disputes of material facts.

In a last-ditch effort to insulate the record from Mr. Simmons's account, Appellees suggest that the Court should disregard all of his testimony because it was "riddled with hearsay statements from

nonparties that would be inadmissible in court." Appellees' Br. 9. Tellingly, the sole example Appellees provide to support this sweeping claim (*see id.* at 9–10) was not relied upon—or even referenced—in Mr. Simmons's Opening Brief and is immaterial to the current dispute.

To the contrary, the bulk of Mr. Simmons's sworn statements were squarely based on his own personal knowledge. Appellees have no principled basis for crying "hearsay" about Mr. Simmons's testimony that MJO Whitaker, Sergeant Brown, and Officer Hull carried him through the air until MJO Whitaker took him to the floor and applied a prolonged chokehold. *See, e.g.*, J.A. 62 ("Whitaker took me to the floor and put me in a chokehold with his huge bicep on my throat."); J.A. 69 ("I know I was strangled"); J.A. 286 ("Defendant R. Whitaker and D. Brown, Benjamin Hull all carried me through the air and R. Whitaker took me to the floor and began to choke me until I was unconscious.").

Appellees' own relevant, out-of-court statements are also fair game. *See* Fed. R. Evid. 801(d)(2) (providing that statements made by party opponents are not hearsay); J.A. 62 (testifying that MJO Whitaker asked "are you going to comply" while choking Mr. Simmons); J.A. 63 (testifying

that Sergeant Brown asked MJO Whitaker "what did you do that for" after Mr. Simmons regained consciousness).

Appellees correctly contend that "affidavits submitted on summary judgment [must] contain admissible evidence and be based on personal knowledge." Appellees' Br. 9. But that is of no moment here, where Mr. Simmons's core factual testimony is based on his own personal knowledge. Any hearsay statements mentioned in Mr. Simmons's pro se filings are not material for summary-judgment purposes and Mr. Simmons does not rely on them to show a genuine issue of material fact.

Even if Mr. Simmons's pro se affidavits—which center around his own personal knowledge about what happened to him—also contain occasional instances of immaterial hearsay, Appellees offer no authority or principled reason to throw out the entirety of his testimony. To the contrary, in their own (and only) cited authority on this issue, "[t]he district judge did not strike the entire affidavit . . . but instead struck and disregarded only those portions it deemed inadmissible or improper." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (cited in Appellees' Br. 9).

Similarly here, this Court can disregard any hearsay statements in Mr. Simmons's affidavits and it would not make any difference. Because Mr. Simmons's statements regarding the choking incident are directly based on his own personal knowledge, a reasonable jury could credit his testimony to find that MJO Whitaker choked Mr. Simmons while Sergeant Brown and Officer Hull watched without intervening. Summary judgment was therefore incorrect, and Appellees' blanket and unsupported assertion of "hearsay" does not counsel otherwise.

Finally, this Court may not affirm summary judgment on qualified-immunity grounds. *See* Opening Br. 41–44. Appellees do not argue otherwise and implicitly concede this point. *See generally* Appellees' Br.

## II. This Court should vacate and remand the issue of MJO Whitaker's dismissal.

Appellees contend that the Court should affirm MJO Whitaker's dismissal for two reasons: because they received an ECF email indicating that the relevant show-cause order was sent to Mr. Simmons's correct address, and because "it would be judicially inefficient" to vacate and remand when the record "does not set forth evidence of excessive force." Appellees' Br. 15. But for the reasons explained in the Opening Brief and above, there is a more-than-sufficient evidentiary basis upon which a

reasonable jury could find that MJO Whitaker's use of prolonged force was unjustified. Given this, and regardless whether the show-cause order was, in fact, sent to Mr. Simmons's correct address, this Court should vacate MJO Whitaker's dismissal, especially considering the unusual circumstances of this case.

First, as noted in the Opening Brief (at 14), the district court dismissed MJO Whitaker in the same opinion in which it entered summary judgment. J.A. 318. For all the reasons outlined above, the district court's decision was erroneous, and this Court should therefore vacate that decision in its entirety.

Second, the district court purported to dismiss MJO Whitaker on the grounds that Mr. Simmons did not show cause because he did not respond to the show-cause order. *See* Opening Br. 14–15; J.A. 318. But remanding on this issue would be appropriate given the circumstances of this case. The district court did not indicate whether it considered circumstances this Court has found to be relevant, including that Mr. Simmons's pro se and in forma pauperis status entitled him to rely on U.S. Marshals to perfect service, 28 U.S.C. § 1915(d); *Shirley v. Staubs*, 812 F. App'x 162, 163 (4th Cir. 2020) (unpublished) (requiring Marshals

to make "reasonable efforts" to obtain a defendant's address); the fact that he was detained for most of the relevant period, *cf. Greene v. Holloway*, No. 99-7380, 2000 WL 296314, at \*1 (4th Cir. 2000) (unpublished); the fact that the record showed multiple, diligent attempts to inform the court about MJO Whitaker's whereabouts, *see* J.A. 27; J.A. 96; J.A. 336–337; Dist. Ct. Dkt. No. 124; and the fact that MJO Whitaker appeared to be intentionally evading even criminal process at the same time, *see* J.A. 96; J.A. 337; *cf. In re Richards*, No. 95-1374, 1999 WL 26913, at \*4 (4th Cir. 1999) (unpublished) (reversing dismissal where "circumstantial evidence overwhelmingly suggest[ed] that [defendant] attempted to evade service").

Given these circumstances and the interconnectedness between MJO Whitaker's dismissal and the district court's summary-judgment error, this Court should vacate the district court's decision in its entirety and remand this issue to the district court.

## CONCLUSION

For these reasons, this Court should vacate the decision below and remand for further proceedings.

Respectfully submitted,

/s/ Steven J. Alagna
Steven J. Alagna
*Counsel of Record*
*Supervising Attorney*

Jacob Cogdill
Ashvanika Dodwani
John Whitney
*Student Advocates*

WASHINGTON UNIVERSITY SCHOOL OF LAW
Appellate Clinic
One Brookings Drive
MSC 1120-250-102
St. Louis, MO 63130
(314) 935-7238
salagna@wustl.edu

*Counsel for Appellant*

Dated: February 15, 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with type-volume limits because it contains 4,235 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). It complies with typeface and type-style requirements because it was typed in size-14 Century Schoolbook font in Microsoft Word for Microsoft 365.

/s/ Steven J. Alagna

## CERTIFICATE OF SERVICE

I certify that on February 15, 2024, I electronically filed the foregoing Reply Brief of Appellant Johnnie R. Simmons, Jr. via this Court's CM/ECF system, which will send notice of such filing to counsel of record in the above-captioned case, and that paper copies of this brief will be mailed by the next business day.

/s/ Steven J. Alagna