**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-6233

JOHNNIE R. SIMMONS, JR.

         Plaintiff – Appellant,

  v.

R. WHITAKER, M.J.D.; D. BROWN, Sergeant; C. WALTZ, Superintendent; BENJAMIN HULL, a/k/a Officer B. Hull

         Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, Retired District Judge. (1:20-cv-00464-TSE-IDD)

Argued: May 7, 2024                                      Decided: July 8, 2024

Before GREGORY, HEYTENS, and BENJAMIN, Circuit Judges.

Affirmed in part, reversed in part, and remanded in part by published opinion. Judge Benjamin wrote the opinion, in which Judge Gregory and Judge Heytens joined.

**ARGUED:** Jacob Cogdill, WASHINGTON UNIVERSITY SCHOOL OF LAW, St. Louis, Missouri, for Appellant. Jeff W. Rosen, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellees. **ON BRIEF:** Steven J. Alagna, Supervising Attorney, Alice Gorman, Student Advocate, Patrick Northrup, Student Advocate, Marc Poissonier, Student Advocate, Zachariah Taylor, Student Advocate, Appellate Clinic, WASHINGTON UNIVERSITY SCHOOL OF LAW, St. Louis, Missouri, for Appellant. Lisa Ehrich, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellees.

DEANDREA GIST BENJAMIN, Circuit Judge:

Johnnie Simmons, Jr., filed a *pro se* 42 U.S.C. § 1983 action against Hampton Roads Regional Jail corrections officers R. Whitaker, Benjamin Hull, and Derrick Brown (collectively, "the officers").[1] He brought an excessive force claim based on a February 8, 2019, incident where Officer Whitaker allegedly choked Simmons. The incident was caught on videotape and entered into the record. The district court granted summary judgment to Officers Hull and Brown after finding the officers' conduct did not violate the Eighth Amendment.

We appointed amicus curiae counsel to represent Simmons on appeal and must now decide whether the grant of summary judgment was proper. We hold that it was not, and therefore reverse and remand for further proceedings.

I.

A.

The parties agree on the events that led up to the incident in question. On February 8, 2019, Simmons, a pre-trial detainee, visited the medical unit of the jail. After the visit, two corrections officers escorted him back to the housing pod. During the transport, Simmons asked to be transferred to a different housing unit because he feared for his life, but his request was denied. At that point, Simmons sat on the floor and refused to walk back to his pod. Additional officers responded to the incident, and the officers eventually

---

[1] Simmons also named C. Walz, the jail's superintendent, as a defendant. The district court granted Walz's motion to dismiss, and Simmons did not appeal.

2

lifted Simmons in the air and carried him down the hallway toward his cell. As they approached the end of the hallway, Simmons began to fall. The parties dispute everything that happened next.

Simmons says that his "left leg dropped to the ground and his right leg remained in [Officer] Brown's grasp," then, Officer Whitaker "wrapped his right arm around [Simmons's] neck and locked him in a chokehold." Opening Br. at 5 (citing Simmons's affidavit). Simmons further claims Officer Whitaker used that chokehold "to drag [him] to the ground," Opening Br. at 6 (citing Simmons's affidavit), then "held the chokehold while keeping his body weight on [Simmons's] back." Opening Br. at 6. Despite his pleas that he could not breathe, Simmons claims Officer Whitaker did not let up and "applied even more pressure" to his neck. *Id.* at 7 (citing Simmons's affidavit). Simmons alleges that he lost consciousness, and when he came to, he noticed that he had urinated on himself. *Id.* at 7 (unconsciousness); *id.* at 10 (urination). According to Simmons, Officer Whitaker held him in the chokehold for nearly a minute. *Id.* at 7. Simmons claims that Officers Hull and Brown did nothing to stop Officer Whitaker's actions. *Id*. at 8. He alleged that Officer Hull kneeled over him, and Officer Brown stood over Officer Whitaker's shoulder as Officer Whitaker choked him. *Id.* at 7 (citing video).

The officers tell a different story. They maintain that as they approached the end of the hallways, Simmons began to kick and flail, and the officers lowered his body to regain control. They assert that Officer Whitaker never choked Simmons. He simply "placed his right arm across the right side of [Simmons's] neck." Response Br. at 2. They say the video shows Officer "Whitaker . . . near appellant's head," "[keeping] his right arm on

3

[Simmons'] back" "for about 50 seconds." *Id.* at 3. Officers Hull and Brown claim that they did not observe a chokehold. *Id.* at 10–11.

B.

Simmons filed a *pro se* § 1983 excessive force complaint that sought to hold Officer Whitaker directly liable, and Officers Hull and Brown liable under a bystander liability theory. J.A. 204–05. He alleged that he was "basically harmless," already handcuffed and not resisting at the time of the incident. J.A. 17. Therefore, he argued, the Officers violated his Eighth Amendment rights when Officer Whitaker choked him to the point of unconsciousness and Officers Hull and Brown watched while he "tr[ied] to beg [Whitaker] to stop and t[old] him 'I can't breathe.'" J.A. 18. Simmons claimed that "everyone stood around [while his] eyes became teary[,] and everything went black." *Id.*

Officer Whitaker never received service of process, so he did not respond to the lawsuit. Nevertheless, Officers Hull and Brown filed motions for summary judgment and argued that the video footage and multiple officer affidavits established that Simmons could not prevail on his § 1983 bystander liability claims because the circumstances made clear that neither officer knew that Whitaker was violating Simmons's constitutional rights. J.A. 36, 259, 263. Three officers, including Hull and Brown, submitted affidavits in support of the motion. In response, Simmons filed a two-part affidavit that recounted his version of the incident. J.A. 60–75.

The district court's summary judgment order first dismissed Officer Whitaker based on a lack of service. J.A. 318 n.2. Then, crediting the video and the officers' version of the event, it entered summary judgment for the defendants. J.A. 323–31. Simmons filed

4

a timely appeal and asserts that the district court erred in three respects. First, he argues that the district court abused its discretion by dismissing Officer Whitaker from the case. Second, he argues that the district court failed to properly apply the summary judgment standard. Last, he contends that the district court applied the wrong legal standard to his constitutional claim. We address each argument in turn.

II.

We review the dismissal of a defendant for lack of service for an abuse of discretion. *Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019). Simmons was incarcerated at the time he initiated the instant lawsuit, so the district court ordered the United States Marshals Service to effect service on the defendants. At the time of service, Simmons had not provided a current address for Whitaker. The district court subsequently dismissed Whitaker for two related reasons: he had not been served and Simmons failed to respond to a show cause order. The show cause order asked Simmons to address "why this civil action should not be dismissed . . . with respect to defendant Whitaker," and gave him an opportunity provide Whitaker's up-to-date address so service could be effected. J.A. 318 n.2 (internal quotation marks omitted).

Simmons originally claimed that the court delivered the show cause order to the wrong address. However, his counsel conceded at oral argument that it was properly delivered. Oral Argument at 5:00–5:35. The remaining arguments regarding Whitaker's service of process were raised for the first time in the reply brief and are therefore waived.

5

*Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017).  We find no abuse of discretion under these circumstances.

### III.

After Whitaker's dismissal, the only remaining issue is whether the district court properly granted summary judgment to Officers Hull and Brown on Simmons's § 1983 bystander liability claims.  The district court erred in its summary judgment analysis in two respects: procedurally, in its handling of the facts and treatment of Simmons's affidavit, and legally, by applying the wrong constitutional standard.

#### A.

An officer may be liable under a § 1983 theory of bystander liability "if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir. 2002).  "The first step in assessing the constitutionality of [the officers'] actions is to determine the relevant facts."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Here, the district court determined the relevant facts by crediting the video footage and the officers' affidavits over Simmons's version of events.  Simmons argues that the reasoning the district court relied on to discredit his account upends basic summary judgment principles and warrants reversal.  We agree.

A grant of summary judgment is appropriate if the movant demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

6

matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, then, a nonmovant must show that there is a genuine dispute of material fact. "A dispute is genuine if the evidence presented would allow a reasonable factfinder to find for the nonmovant." *Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024) (internal quotation marks omitted). The nonmovant must "cit[e] to particular parts of materials in the record, including . . . affidavits." Fed. R. Civ. P. 56(c)(1)(A). To decide whether a genuine issue exists, "a court must view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party." *Bhattacharya*, 93 F.4th at 686.

The Supreme Court's decision in *Scott v. Harris* identified an "added wrinkle" to the traditional summary judgment rule. *See* 550 U.S. 372, 378 (2007). "[W]hen a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.'" *Witt v. W. Va. State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011) (quoting *Scott*, 550 U.S. at 380) (second alteration in original). Thus, at the summary judgment stage, video evidence can only discredit a nonmovant's factual assertions if the video "blatantly" contradicts the nonmovant's position. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (internal quotation marks omitted).

To be sure, the *Scott* standard does not upend the traditional summary judgment analysis. Instead, it "simply reinforces the unremarkable principle that 'at the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party'

7

when 'there is a *genuine* dispute as to those facts.'" *Witt,* 633 F.3d at 277 (quoting *Scott,* 550 U.S. at 380) (cleaned up).

Here, the district court rejected Simmons's account based on the existence of the video evidence but did not decide whether the videotape "blatantly" or "clearly" contradicted Simmons's account, as *Scott* requires. Its *Scott* analysis focused instead on whether the videotape was "unchallenged."[2] *See* J.A. 320–23. Under *Scott* and our circuit precedent, however, even an unchallenged video must be taken in the light most favorable to Simmons at summary judgment if it does not blatantly contradict his account of the facts. *See Scott*, 550 U.S. at 378–80 (affirming that video evidence trumps a nonmovant's factual account at summary judgment only when "[t]he videotape *quite clearly* contradicts" the nonmovant's version, and when a party's story is "*blatantly contradicted* by the record," such that "no reasonable jury could believe" the nonmovant's version in light of the video evidence (emphasis added)); *Bhattacharya*, 93 F.4th at 686 ("[A] court must view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party.").

---

[2] The district court erroneously mistook a factual conclusion made in *Iko* as a legal conclusion. *See Iko*, 535 F.3d at 230 (stating that "where, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape"). The district court analyzed whether the video in the record was "unchallenged," and, after finding it was not, discredited Simmons's rendition of the facts. The *Iko* panel, however, first properly applied *Scott* and found that the video evidence in that case "blatantly contradicted the . . . record, so that no reasonable jury could believe" the nonmovant's account before discrediting the video. *Id.* Thus, the district court misapplied *Iko*.

8

Simmons's affidavit stated that "Whitaker took [him] to the floor and put [him] in a choke hold." J.A. 62. After careful review of the video, we find that it does not blatantly contradict that account. A reasonable jury may well find that at 12:11:51 of the video footage, for example, Whitaker—who is standing to the left of Simmons—is taking him "to the floor and put[ting] [him] in a choke hold." J.A. 62. Simmons is the person suspended in the air and surrounded by three officers.



Video at 12:11:51 (retrieved from District Court ECF No. 34, exhibit 4) (zoomed in).

A reasonable jury may also find that at 12:11:51, the video supports the officers' account and shows "[Officer] Whitaker . . . near appellant's head," "[keeping] his right arm on [Simmons's] back." Resp. Br. at 3. The point is that the video footage does not *blatantly* establish factual circumstances contrary to Simmons's account. Thus, the district court

9

erred when it distorted traditional summary judgment standards and adopted the officers' factual position.

The district court also dismissed Simmons's affidavit because it "contain[ed] primarily hearsay from non-parties or admit[ted] the general sequence of events, and [contained] numerous unsworn pleadings repeatedly representing facts based upon hearsay." J.A. 323 (internal citation omitted). "[S]ummary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Servs. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citation omitted). They must "contain admissible evidence and be based on personal knowledge." *Id.* If they don't, however, the district court should not "strike the entire affidavit," but instead should "str[ike] and disregard[] only those portions it deem[s] inadmissible or improper in accordance with Rule 56(e)." *Id.; see also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact . . . the court may . . . grant summary judgment.").

Here, the district court improperly ignored material admissible evidence in Simmons's affidavit. For example, the court adopted the officers' view that Simmons kicked and flailed, defying the officers' commands to stop, J.A. 324, and ignored Simmons's position that he "did not resist," J.A. 62. The court again adopted the officers' account that "Hull and Brown did not observe Officer Whitaker choke plaintiff," J.A. 325, and ignored Simmons's affidavit that stated the other officers "stood and watched" Whitaker choke him, and "no one tried to stop him or say anything," J.A. 62–63.

By essentially striking the entirety of Simmons's affidavit, which included admissible testimony that introduced questions of material fact regarding the incident in

10

question, the district court again distorted traditional summary judgment standards. It is axiomatic that a court must credit the nonmovant's account of the facts at summary judgment. The district court breached this longstanding principle, and its order must be reversed.

B.

The district court also applied the wrong legal standard. Excessive force allegations are subject to different reviewing standards based on the status of the plaintiff. For a pre-trial detainee, the proper standard comes from the Fourteenth Amendment. It requires a showing that "the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97. The Supreme Court provided a non-exhaustive list of factors courts must use to determine objective reasonableness:

> [1] [T]he relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting.

*Id.* at 397.

In contrast, claims brought by people that have been convicted and formally sentenced must meet the Eighth Amendment standard. *See Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989) ("[T]he Eighth Amendment's protections d[o] not attach until after conviction and sentence."). The Eighth Amendment requires claimants to make a subjective showing that the officer acted "maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (internal quotations

11

omitted). The non-exhaustive *Whitley* factors determine an officer's subjective culpability: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko*, 535 F.3d at 239 (citing *Whitley*, 475 U.S. at 321) (internal quotations omitted).

Although Simmons was a pre-trial detainee whose claims were therefore governed by the Fourteenth Amendment, the district court applied the Eighth Amendment standard and granted summary judgment because it found that "[t]he actions of the officers d[id] not evince ay [sic] malice or ill will." J.A. 331. The court determined that "the officers used minimal force to get Plaintiff back to his cell, and used reasonable force to prevent Plaintiff from in jurying [sic] himself and to regain control." *Id.* That constitutes legal error.

We recognize that Simmons's *pro se* complaint references Eighth Amendment caselaw, but *pro se* documents are to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Indeed, this circuit has long held that "[w]here the context . . . makes clear a litigant's essential grievance, the complainant's additional invocation of general legal principles need not detour the district court from resolving that which the litigant himself has shown to be his real concern." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Therefore, the district court had a duty to look beyond the legal standards Simmons produced in his complaint and instead apply the law applicable to his essential grievance: the excessive force he suffered as a pre-trial detainee.

The Officers argue there is no reversible error because the *Kinglsey* and *Whitley* factors are substantially the same. This argument is unpersuasive. Although the factors appear similar, they can achieve different ends. Take, for instance, the district court's focus on what it considered a lack of malice. From the *Whitley* factors, the district court concluded that "[t]he actions of the officers do not evince ay [sic] malice or ill will" because they "used reasonable force to prevent [Simmons] from in juring [sic] himself and to regain control." J.A. 331. That analysis justified the district court's grant of summary judgment under *Whitley*, but it does not necessarily foreclose a finding of objective reasonableness under *Kingsley*. In other words, the court committed reversible error because it did not address the relevant inquiry.[3] *Cf. Kingsley*, 576 U.S. at 403–04 (finding error where a jury was instructed to consider an official's subjective reasons for applying force to a pre-trial detainee).

## IV.

The district court erred by applying the incorrect constitutional framework and by misapplying longstanding summary judgment standards. Its summary judgment order is therefore

*AFFIRMED IN PART, REVERSED IN PART, AND REMANDED IN PART.*

---

[3] The district court disposed of the officers' motion without addressing the legal claim before it. The court ruled on the constitutionality of the alleged violative action itself and granted summary judgment without reaching bystander liability. *See* J.A. 331 ("[T]he officers used minimal force to get Plaintiff back to his cell, and used reasonable force to prevent Plaintiff from in juring [sic] himself and to regain control."). Because it did not address bystander liability in the first instance, we find that the claim is not properly before us on review. Thus, our holding stops short of deciding the issue, and the summary judgment order is reversed and remanded for further proceedings consistent with this opinion.